STONE-ORDEAN-WELLS CO. *v.* NEW ENGLAND PIE CO.

1. CORPORATIONS—PRINCIPAL AND AGENT—OFFICERS—CONTRACTS—
   PRESUMPTIONS.
      In the absence of any provision to the contrary contained
      in the charter of a corporation, it will be presumed that
      its president, secretary, and treasurer have the authority
      to make all necessary contracts in transacting the ordinary
      business of the corporation within the legitimate scope,
      object, and purposes of its organization.[1]

2. SAME—ULTRA VIRES CONTRACTS—PRINCIPAL AND SURETY.
      An undertaking by a corporation to repurchase all of a
      certain quantity of prepared flour left on plaintiff's hands
      after 60 days, sold to it by another corporation, certain
      stockholders of which were officers of defendant, was *ultra
      vires* and void; the only consideration being to promote
      the business of another.

3. SAME—ESTOPPEL.
      In a suit to enforce said contract, defendant is not estopped
      from urging the defense of *ultra vires*, it not having
      profited from the transaction, nor does it appear that all
      the stockholders had knowledge of and acquiesced in, or
      did not complain about, the unauthorized acts of the
      officers.

Error to Wayne; Brown, J., presiding.   Submitted
January 24, 1918.  (Docket No. 132.)   Decided June
3, 1918.

Assumpsit by the Stone-Ordean-Wells Company
against the New England Pie Company on a contract
for the repurchase of unsold goods.   Judgment for
plaintiff on a directed verdict.   Defendant brings er-
ror.   Reversed.

*Berger & Milburn (Monaghan, Monaghan, O'Brien
& Crowley, of counsel), for appellant.
Beaumont, Smith & Harris, for appellee.*

[1]See note in 7 L. R. A. (N. S.) 376.

The declaration sets out, and alleges a breach of, a written contract, reading:

"NEW ENGLAND PIE COMPANY,
    "Strictly Home Made Pies,
    "Fourth & Beech Streets.
        "DETROIT, MICHIGAN, July 2, 1914.
"STONE-ORDEAN-WELLS COMPANY,
    "Duluth, Minn.

"*Gentlemen:* On May 27, 1914, you ordered 2,250 dozen Ovengold from Allmade Bakeries, Inc. The order was made by you subject to an agreement satisfactory to you to take back all of the Ovengold which you had unsold 60 days after date of arrival of the car at Duluth. The undersigned, New England Pie Company, is interested in the sale of Ovengold to you, and in consideration of that sale, and for the purpose of complying with the agreement therein contained with reference to the taking back of the unsold portion of Ovengold, the New England Pie Company agrees to pay you at the rate of $2.25 per dozen for all of Ovengold shipped to you under this order, which you have on hand in your warehouse unsold on August 10, 1914, being 60 days after the arrival of the shipment of the same at Duluth.

"All of such Ovengold in your hands at the close of business on August 19th, will be our property, and we will later give you shipping directions for the same, and upon receipt of invoice from you showing the amount held by you for us, will send you check at the rate of $2.25 per dozen for the same.

                        "Yours truly,
                "NEW ENGLAND PIE COMPANY,
            "By H. J. BOERTH, Sec. & Treas.
            "H. H. JONES, Vice-Pres.
            "A. J. POTTER, Member Board."

—and contains also the common counts in assumpsit. The plea is the general issue, with notice that defendant would prove (1) that the instrument purporting to be and relied upon as a contract, set out in the declaration, is invalid because *ultra vires* the scope and power of defendant and that the action of the persons exe-

cuting it was "without authority in law, contrary to the statute," and amounts to a legal fraud upon the stockholders of defendant, (2) that it was without consideration and for that reason illegal and void, (3) that it is—

"invalid and without binding effect in that so far as the defendant ever promised and became liable, as set forth in the plaintiff's declaration, it was afterwards absolved from such a promise and released from such liability by the plaintiff by a practical waiver thereof due to the fact that if there was any liability at all, same became fixed on August 10, 1914, but the plaintiff undertook to adjust its difficulties with the Allmade Bakeries, Inc., of Detroit, Michigan, by correspondence and received a reply to many proposals and counter-proposals of adjustment of its claims, and did not until the first day of December, 1914, make any demand of any kind upon this defendant for payment of the amount claimed to be due, or tender delivery of the merchandise on hand as of August 10, 1914, or make any other effort, tender or demand upon this defendant in accordance with said alleged contract. Wherefore, by reason of the granting of said extension of time, the plaintiff waives its right to insist upon performance of said contract by this defendant."

Defendant filed an affidavit denominated an affidavit denying execution of the contract. A trial resulted in a directed verdict for the plaintiff, and a judgment thereon, no question of fact being presented, and counsel for both parties having requested a peremptory instruction. A motion for a new trial was refused. Defendant, appellant, alleges error in directing a verdict for plaintiff and in refusing to direct one for defendant, in refusing a new trial, in refusing certain testimony offered by defendant, and in striking out on plaintiff's motion certain testimony given by defendant's witness Boerth.

The substance and effect of the testimony is: Plaintiff is a corporation engaged in selling groceries at

wholesale at Duluth, Minnesota. Defendant is a Michigan corporation, with its principal place of business in Detroit, Michigan, and is engaged in baking and selling pies. Its corporate business as stated in its articles of association is:

"The baking, manufacture of, and dealing in and selling of pies of all kinds; and also the baking, manufacture of, and dealing in and selling of all other kinds pastry—bread, cakes, etc., both at wholesale and retail."

On July 2, 1914, its authorized capital was $100,000, stock representing $83,000 had been issued, and of this Mr. Boerth held $38,000, Mr. Jones $2,000, Mr. Potter $2,000. The Allmade Bakeries, incorporated, is a Michigan corporation, in which Mr. Boerth and Mr. Jones were interested, they holding, respectively, 251 and 180 shares of 721 issued shares of its capital stock, which they acquired in consideration of a certain formula for making "Ovengold," which they turned over to the company. The company (its articles of association do not appear in the record, but certain facts were given in testimony) was organized to manufacture prepared flour for making cakes, containing flour, shortening, baking powder, eggs, and milk. Two kinds of prepared flour were made by it, one for biscuits and one for cake. The one prepared for making cake is called Ovengold. It was packed and sold in cartons weighing one pound. All the housewife had to do was to mix it with water and bake it. In the year 1914 the products of the Allmade Bakeries were being introduced to the trade and to the public, by a campaign of advertising and otherwise. In May, 1914, representatives of this company called upon the buyer for plaintiff at Duluth, expressing the desire to have plaintiff act as distributing medium or agent for Ovengold. After certain negotiations, plaintiff gave an order in the following form:

"ALLMADE BAKERIES, INC., Detroit, Michigan,
    "1254-60 Twelfth Street.

"Date—5/27/14.

"Ship at once to STONE-ORDEAN-WELLS COMPANY,
    "Duluth, Minn.

"Via Northern Navigation Company, from Detroit,
    "Mich.

"2250 dozen Ovengold at 2.25.

"The New England Pie Co., Detroit, Mich., agree to purchase at $2.25 per doz. any of this order on hand 60 days after date of arrival.

"J. M. VAN RIPER.

"Terms: Less 15%—2% Ten days.

"These goods are not consigned. No conditions except when written on their order apply to the terms of this sale.

"Buyer S. O. W. Co. O. Kincaid, J. M. Van Riper, Salesman."

Pursuant thereto, the Ovengold was shipped, the invoice, produced by plaintiff, reading:

"Allmade Bakeries, Inc.
    "1256-70 Twelfth Street,
        "Detroit, Michigan.

"June 1, 1914.

"Sold to—STONE-ORDEAN-WELLS CO.,
    "Duluth, Minn.                  Terms: Net,   30 days
                                    " 2% 10 days

"Shipped via ——————————
    "2250 Dozen Ovengold at $2.25.. $5062.50
                "Less 15%..   759.37
                                    ————————
                                    $4303.13
    "Less Soo Pro 972—6/11/14..      98.00
                                    ————————
                                    $4205.13

"Endorsed on the face of the above are—Stamped on—'Duluth, Minn. Paid. Jul 13, 1914, Stone-Ordean-Wells Co.'; 'Posted, Jun. 22, 1914' and 'Jun. 4 Rec'd.' In Pencil—'Frt. ded.'; '829-6/11/14' and 'Don't Pay.'"

The notation "829-6/11/14" was made by a clerk and it refers to the invoice number and date of arrival of car. The notation "Jun. 4 Rec'd" means date when

invoice was received by mail. The deduction of $98 was made by clerk to cover freight charges, the goods having been sold f. o. b. Duluth.

The goods arrived at Duluth June 11, 1914. Payment was withheld until plaintiff received from defendant the written promise hereinbefore set out. Then the amount called for by the invoice, $3,212.33, was paid by plaintiff to Allmade Bakeries, Inc.

The product was not all of it sold, so that on August 10, 1914, it had on hand, unsold, 1,433 of the 2,250 dozen packages. The unsold goods were later, and after certain correspondence, stored with the Northern Cold Storage & Warehouse Company at Duluth, and remain there. Not all of the correspondence of the parties after August 10, 1914, appears in the record. Some of it does, the first letter being one addressed to defendant by plaintiff, enclosing one written by plaintiff to Allmade Bakeries, Inc., both dated October 26, 1914. Both letters refer to one of date October 7 from Allmade Bakeries, Inc., to plaintiff. The significance attributed by defendant to the correspondence is, principally, that some of the letters refer to its undertaking as a guaranty and that it evidences an effort on the part of plaintiff to adjust the matter with the Allmade Bakeries, Inc., before looking to defendant, and that it appears from the correspondence that no demand was made upon defendant by plaintiff until December 1, 1914, upon which date it enclosed to them in a letter an invoice for the unsold Ovengold at $2.25 per dozen, the amount claimed being $3,224.75. The letter of October 26th written to defendant by the plaintiff, contains the following:

"Would be glad to hear from you as to your position in this matter. As to whether or not we shall turn to you directly in this, or shall work first through the Allmade Bakeries for the recovery of our moneys in-

vested in these goods. We dislike entering into suit in this matter, but if they continue to handle the matter as they intend to in their letter of the 7th, or in accordance with their attitude, we shall have but one thing to do, and that would be to enter suit in this matter both against your good selves and the Allmade Bakeries.

"We are advising you of our position in this matter, and beg to remain."

On October 30, plaintiff again wrote to defendant as follows:

"NEW ENGLAND PIE COMPANY,
   "Detroit, Michigan.
      "Attention—Mr. H. J. Boerth.
*"Dear Sir:* Will you please note the attached copy of letter Mr. Boerth, which bears again upon the subject of the invoice of the Allmade Bakeries to the Stone-Ordeans-Wells Company, all of which is protested" (protected) "by guaranty of the New England Pie Company, which correspondence we desire you to have before you to form a copy of said correspondence?

"We wish to ask you to personally see that this matter is given the consideration that it deserves and which we are entitled to under the New England Pie Company's guaranty, as well as the guaranty of the Allmade Bakeries, Incorporated."

Again, on November 9th, plaintiff wrote to defendant:

"NEW ENGLAND PIE COMPANY,
      "Detroit, Michigan.
*"Gentlemen:* That you may be advised, we attach herewith copy of our letter to the Allmade Bakeries, Incorporated."

It does not appear that defendant made any reply, and on December 1st, plaintiff sent to it the letter already referred to, reading:

"NEW ENGLAND PIE COMPANY,
   "Fourth and Beech Streets,
      "Detroit, Michigan.
*"Gentlemen:* We have sent you from time to time,

copies of such correspondence as we have had with the Allmade Bakeries, Incorporated, concerning the Ovengold flour on hand, which was covered by the guaranty in your letter of July 2, 1914.

"We have been unable to work out a satisfactory arrangement with the Allmade Bakeries, Incorporated, closing this account.

"We now have on hand 1,433 dozen of Ovengold which is contained in 1,424 cases, one case being a repacked case containing ten dozen. Invoice for this is enclosed.

"On your agreement you ought to send us check at $2.25 per dozen for the amount in our hands on receipt of this invoice. Please send us your check at once and give us shipping instructions."

No accommodation of the matter resulted, and this suit was brought.

Appellant says that the court was in error:

"1. In failing and refusing to grant defendant's motion to direct a verdict in its favor, and in granting plaintiff's motion, on the ground that the contract was one of guaranty and totally without consideration, and —therefore *ultra vires*, illegal, and void.

"2. In failing and refusing to grant the defendant's motion for new trial, because the verdict and judgment, entered thereon, are against the great weight of evidence and the other grounds set forth in said motion.

"3. In refusing to admit evidence as to the preliminary negotiations leading up to the contract, relied upon by the plaintiff.

"4. In striking out the answer to the following question:

"'Q. Now, would the New England Pie Company, in the manufacture of its pies and cakes, or pastry, have any use for, or be able to use the kind of flour sold by the Allmade Bakeries Co.?

"'A. No.'"

Appellee, on the contrary, contends:

(1) That the contract is not a guaranty but one of purchase and sale.

(2) It is not *ultra vires*.

(3) It is supported by a sufficient consideration.

OSTRANDER, C. J. (*after stating the facts*).   Whatever may have been the interest of certain officers of the defendant, who were also shareholders in the All-made Bakeries, Inc., in the success of the last-named company, the case must be considered and decided with regard to the powers and the legal rights of the defendant.   The record furnishes no evidence of any corporate action of defendant in the premises.   None was required if its undertaking, relied upon here, was one which its agents, acting for it, could engage it to make.

"In the absence of any provision to the contrary contained in the charter of a corporation, it will be presumed that its president, secretary, and treasurer have the authority to make all necessary contracts in transacting the ordinary business of the corporation within the legitimate scope, object, and purposes of its organization."  *Eureka Iron & Steel Works* v. *Bresnahan,* 60 Mich. 332, 339.

See *Galvin* v. *Windshield Co.,* 176 Mich. 569; *Timm* v. *Brewing Co.,* 160 Mich. 371; *Harrison Wire Co.* v. *Moore,* 55 Mich. 610.

This elementary rule is not denied but is relied upon by counsel for appellee, who assert that what defendant undertook was a purchase—upon conditions, it is true—of a commodity which it could use in its business, as the business is defined and delimited in its articles of association.   It could purchase, they say, flour in quantities, therefore prepared flour, and although the prepared flour could not be used to make pies, and it had theretofore made only pies, it could be used to make cake, and it was organized with power to make cake.

It cannot be doubted that the undertaking of the defendant, promised in the order for the goods, con-

firmed and made formally definite in the letter of July 2d, was the inducement which brought about the original sale from Allmade Bakeries to plaintiff. The undertaking of defendant, expressed in the letter, with the recitals, while not in form strictly an undertaking to answer for the debt, default, or miscarriage of another, does not guarantee the performance of anything which any one else had promised or undertaken, is nevertheless, plainly, evidence of something more than a mere agreement to purchase goods for the use, the business, of defendant. It refers to the order for the goods, reciting that it was made subject to the agreement sought now to be enforced. It imports that it is given pursuant to an arrangement according to which the order for the goods was given. To make this more conclusive, it is recited that the defendant is interested in the sale of Ovengold and that the undertaking is "in consideration of that sale." Any idea of a purchase or an offer to purchase the goods—to repurchase them—in the course of the business of defendant is distinctly negatived. There is no uncertainty of meaning. The writing, especially when it is read with the order for the goods, is conclusive evidence that the credit of the defendant was intended to be pledged to plaintiff, to promote the business of the Allmade Bakeries Company. No other reasonable construction can be given it. Beyond this, no consideration moved to the defendant for the undertaking, and it does not appear that it would have gained for itself anything of considerable value if it had performed the undertaking. It is not a case where the corporation urging the defense of *ultra vires* has profited by the action it repudiates, or a case where it appears that all stockholders had knowledge of and acquiesced in, or did not complain about, unlawful, because unauthorized, acts of officers. The rule is well stated in 10 Cyc. p. 1156, as follows:

"Except in cases where the rights of the public are involved the plea of *ultra vires*, whether interposed for or against a corporation, will not be allowed to prevail when it will not advance justice, but will accomplish a legal wrong. * * * The great mass of judicial authority seems to be to the effect that where a private corporation has entered into a contract in excess of its granted powers, and has received the fruits or benefits of the contract, and an action is brought against it to enforce the obligation on its part, it is estopped from setting up the defense that it had no power to make it."

If the court could weigh one resulting injustice against another, it could not enforce this demand except by doing injustice to some, although a minority, of the unoffending shareholders of defendant.

It must be held that the undertaking is not that of defendant and that it is not estopped to so assert. This disposes of the case. The judgment is reversed, with costs of both courts to appellant.

BIRD, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred. KUHN, J., did not sit.