ROBERTS TOBACCO COMPANY *v.* DEPARTMENT
OF REVENUE.

1. Injunction—Trade Secrets—Interference.
   Under proper circumstances, equity will grant injunctive relief to protect property rights, in the nature of trade secrets, against unauthorized interference.

2. Equity—Pleading—Motion to Dismiss.
   On motion to dismiss a bill of complaint, well-pleaded averments of fact therein must be taken as true.

3. Injunction—List of Customers—Trade Secrets—Reciprocal Agreements Between Tax-Law Enforcement Officers.
   Bill to enjoin agency administering State cigarette tax law from furnishing lists of plaintiff's customers, obtained incident to enforcement of the law, to officials in other States under re-

---

References for Points in Headnotes
[1] 28 Am. Jur., Injunctions, § 110.
[2] 41 Am. Jur., Pleading, § 332.
[3] 28 Am. Jur., Injunctions, §§ 30, 280, 282.
[4] 51 Am. Jur., Taxation, § 980.
[5, 6, 8, 12] 49 Am. Jur., States, Territories and Dependencies, § 11.
[5, 6, 8, 12] Constitutionality, construction, and application of compacts and statutes involving co-operation between States. 134 A.L.R. 1411.
[7] 42 Am. Jur., Public Administrative Law, § 43.
[7] Validity of statute or ordinance vesting discretion in public officials without prescribing a rule of action. 12 A.L.R. 1435, 54 A.L.R. 1104, 92 A.L.R. 400.
[7] Permissible limits of delegation of legislative power, 79 L. Ed. 474, 484.
[9] 50 Am. Jur., Statutes, § 223.
[10] 50 Am. Jur., Statutes, §§ 303, 306.
[11] 42 Am. Jur., Public Administrative Law, § 92.
[11, 12] Constitutionality, construction, and effect of statute or regulation relating specifically to divulgence of information acquired by public officers or employees. 165 A.L.R. 1302.
[13] 14 Am. Jur., Costs, § 34.

ciprocal agreements therewith, which bill did not allege that information contained in such lists would be divulged to plaintiff's competitors or used detrimentally to plaintiff's business or that such uses are threatened, failed to show actual injury to the exercise of its property rights in case the relief sought were not granted (Act No. 265, Pub. Acts 1947).

4. SAME—CONJECTURE.

Injunctive relief may not be granted on the basis of mere speculation or conjecture that plaintiff will be deprived of property rights as a result of the action sought to be enjoined.

5. TAXATION—INCONVENIENCE.

The State may enact stringent measures to enforce the collection of public revenue and the imposition of inconvenience, however great, is not sufficient to defeat the law.

6. STATES—INTERSTATE RECIPROCAL AGREEMENTS—PROPERTY—INTERSTATE COMMERCE.

Interstate reciprocal arrangements between agencies charged with enforcing cigarette tax laws, which provide for exchanging lists of customers of licensees but not for use or divulgence of such lists to others than enforcement officers does not deprive such licensees of any property rights protected by either the State or Federal Constitutions, nor constitute an interference with or burden upon interstate commerce.

7. SAME—FEDERAL CONSTITUTION—INTERSTATE COMPACTS.

Provision of Federal Constitution prohibiting one State from entering into an agreement or compact with another State without the consent of congress has reference to political compacts, alliances and treaties which might encroach upon the supremacy of the United States but does not apply to agreements between States in an effort to keep their respective tax laws from being evaded (U. S. Const., art. 1, § 10).

8. OFFICERS—RULES AND REGULATIONS—FINDING FACTS—DISCRETION.

The legislature may authorize an administrative agency, charged with the administration of the provisions of a statute, to adopt rules and regulations to carry out the purpose of the legislature as expressed by it, to find facts and to exercise some discretion in the administration of the statute.

9. TAXATION—ENFORCEMENT OF CIGARETTE TAX LAW—RECIPROCAL INFORMATION EXCHANGE AGREEMENT.

The provisions of the cigarette tax act are sufficiently broad to empower its administrative agency, the department of revenue, to obtain information essential to the enforcement of the act

from tax authorities in other States as contemplated by reciprocal information exchange agreements in order to check returns made by licensees (Act No. 265, Pub. Acts 1947).

10. STATUTES—CONSTRUCTION—INTENT.

The basic rule in construing a statute is to ascertain and give effect to the legislative intent.

11. SAME—CONSTRUCTION—GENERAL PURPOSE—AMBIGUITY.

In order to ascertain the legislative intent as to one provision of a statute such clause must be read in connection with other pertinent provisions and a meaning given thereto consistent with the general purpose sought to be accomplished, especially where questioned provision is ambiguous.

12. OFFICERS—DIVULGENCE OF CONFIDENTIAL INFORMATION.

Statute creating department of revenue, which included a provision prohibiting employees from divulging information obtained in connection with the administration of the department "unless in accordance with a judicial order, as shall be required in the proper administration of this act," while ambiguous, obviously intended divulgence in order to comply with judicial orders and permitted disclosure when necessary to the proper administration of the act without obtaining a court order (Act No. 122, § 11, Pub. Acts 1941).

13. TAXATION—CIGARETTE TAX ACT—DIVULGING INFORMATION TO TAX-COLLECTING AUTHORITIES OF OTHER STATES.

The divulging of information to tax-collecting authorities in other States has reference to the enforcement of the cigarette tax act and permits the obtaining in a proper and legitimate manner of information requisite to such enforcement (Act No. 122, § 11, Pub. Acts 1941; Act No. 265, Pub. Acts 1947).

14. COSTS—PUBLIC QUESTION—DIVULGING INFORMATION TO TAX-COLLECTING AUTHORITIES OF OTHER STATES.

No costs are allowed in suit to determine whether or not persons in the department of revenue may disclose information in the nature of trade secrets to tax-collecting authorities in other States pursuant to reciprocal agreements, a public question being involved (Act No. 122, § 11, Pub. Acts 1941; Act No. 265, Pub. Acts 1947).

Appeal from Ingham; Hayden (Charles H.), J. Submitted June 15, 1948. (Docket No. 13, Calendar No. 44,056.) Decided October 4, 1948.

Bill by Roberts Tobacco Company, a Michigan corporation, against Department of Revenue to restrain furnishing a list of customers of plaintiff to anyone not in employ of defendant. Bill dismissed. Plaintiff appeals. Affirmed.

*Monaghan, Clark, Crawmer & Hart (L. Edwin Wenger,* of counsel), for plaintiff.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *T. Carl Holbrook,* Assistants Attorney General, for defendant.

CARR, J. Defendant in this case is charged with the administration of Act No. 265, Pub. Acts 1947 (Stat. Ann. § 7.411 [1] *et seq.*), which measure imposes a specific tax on the sale and distribution of cigarettes in this State. All persons engaging in the business of manufacturing, transporting or selling cigarettes are required to obtain licenses appropriate to the nature of the business transacted. Records are required to be kept and monthly returns to the department of revenue made on forms prescribed thereby. It is specifically provided that each return so made shall state "the number of cigarettes purchased or sold by such licensee in the State during the preceding calendar month and such return shall contain or be accompanied by such further information as the department shall require."

The bill of complaint in the instant case alleges that plaintiff is licensed under the act in question as a "secondary wholesaler." The act defines the term as meaning "any person who does not purchase at least 75 per cent. of his cigarettes from the manufacturers and who sells at least 75 per cent. of the cigarettes purchased by him." Plaintiff avers that its business is wholly interstate. The bill further

avers that in accordance with the provisions of the statute the defendant requires that each monthly return filed by a licensee shall have attached thereto schedules setting forth specific information, including a list of the names and addresses of persons to whom cigarettes have been sold during the period covered by the return. Plaintiff alleges that it is informed that defendant intends to furnish such information to officials in other States under reciprocal agreements therewith, that such proposed action is not authorized by the provisions of the statute, that it will impose a burden on interstate commerce, and that it will constitute a violation of property rights of the plaintiff guaranteed by both State and Federal Constitutions. For the reasons indicated, the bill of complaint asks that defendant be "permanently restrained and enjoined from furnishing a list of plaintiff's customers to any officer, board or commission of any other State of the United States or to anyone not in the employ of the Michigan department of revenue and be required to keep such list of customers confidential."

On the filing of the bill of complaint an order was issued by the circuit court requiring defendant to show cause why a temporary injunction should not issue. Said order further contained a restraining provision in accordance with the prayer of the bill of complaint. Defendant moved to dismiss, claiming that the bill of complaint did not set forth facts entitling plaintiff to the relief sought, that the proper administration of Act No. 265, Pub. Acts 1947 requires checking and verification of reports filed by licensees, and that the department of revenue is proceeding properly in obtaining requisite information through mutual assistance agreements with tax collection authorities in other States having cigarette tax laws. The order to show cause and the motion

to dismiss were heard together by the trial court. The motion was granted, and plaintiff has appealed.

Plaintiff claims that its lists of customers are in the nature of trade secrets, that they constitute a part of the good will of its business, and that their secrecy is a valuable property right of which plaintiff may not be deprived under constitutional guaranties of both State and Federal Constitutions. Reliance is apparently placed on article 2, § 16, of the State Constitution and the 14th Amendment of the Federal Constitution. However, the bill of complaint does not allege that the carrying out of the reciprocal arrangements in question will result in any information contained in the customers' lists being divulged to competitors of the plaintiff or to others who may use it in any manner to the detriment of the plaintiff in the conduct of its business. It is not made to appear that any such use is threatened. Under proper circumstances, equity will grant injunctive relief to protect property rights, in the nature of trade secrets, against unauthorized interference. *Grand Union Tea Co.* v. *Dodds,* 164 Mich. 50 (31 L.R.A.[N.S.] 260), cited by plaintiff, furnishes a typical illustration. There defendant, who had been a driver in plaintiff's employ, was enjoined from using lists of customers to aid the business of one of plaintiff's competitors. However, the principle recognized and applied in said case and in other decisions of like import, is not applicable to the situation presented in the case at bar. Well-pleaded averments of fact in the bill of complaint must be accepted as true, but, as indicated, we find no showing therein that plaintiff has been, or will be, actually injured in the exercise of its property rights if the relief sought is not granted.

In *Van Husan* v. *Heames,* 96 Mich. 504, this Court sustained, against constitutional objections, a statutory provision forbidding the recording of an instru-

ment of conveyance of real estate without the presentation of a certificate showing the payment of all taxes due on the property for the preceding five-year period. It was said, in part:

"We do not think that the provisions of the section constitute an unwarrantable infringement of property rights. Mere inconvenience, however great, is not sufficient to defeat a law. That is a consideration for the legislature, and not for the court. The State may enact stringent measures to enforce the collection of the public revenue."

On the record before us it cannot be said that the carrying out of the reciprocal arrangements in question will deprive plaintiff of any property rights protected by either the State or the Federal Constitution. The injunctive relief sought may not be granted on the basis of mere speculation or conjecture that any such result will follow.

The further claim that the action that plaintiff seeks to prevent constitutes an interference with interstate commerce is without merit. No showing is made that the action of the State department of revenue, in procuring, in the manner in question, information on which to check the monthly returns made by plaintiff in accordance with the statute, will result in placing any burden whatsoever on the operation of plaintiff's business or will constitute in any way an interference therewith. In *Dixie Wholesale Grocery, Inc.,* v. *Martin, Commissioner of Revenue,* 278 Ky. 705 (129 S.W.[2d] 181), the court had under consideration an agreement between the revenue department of Kentucky and the taxing authorities of Ohio, relative to the exchange of information bearing on the enforcement of their respective tax laws, which agreement was expressly authorized by a Kentucky statute. In rejecting the claim that such interchange of information resulted in imposing a burden on interstate commerce, it was said:

"We cannot see that the sending of these reports to Ohio imposes any burden upon, or is a direct interference with, interstate commerce. A case very much in point with the one we have before us is *Arkansas Louisiana Gas Company* v. *Department of Public Utilities,* 304 U.S. 61 (58 Sup. Ct. 770, 771, 82 L. Ed. 1149). There the gas company was selling gas in interstate commerce and the department of public utilities of Arkansas, under one of its regulations, sought to require the gas company to file with the department reports showing charges, rates, et cetera. The gas company refused and contended such regulation interfered with interstate commerce. The United States supreme court held the regulation placed no material burden or undue interference upon commerce between the two States, and that it was reasonable for the State of Arkansas to obtain the highly important information which the reports of the gas company disclosed concerning its operations. * * *

"The reciprocal agreement between Ohio and Kentucky for the exchange of data contained in the sales tax reports required of certain businesses conducted within their respective borders, does not conflict with article 1, § 10, of the Federal Constitution, USCA, prohibiting one State from entering into a compact with another. This section has reference to political compacts, alliances and treaties. In support of its contention that this reciprocal agreement between Ohio and Kentucky violates article 1, § 10, of the Federal Constitution, appellant cites *Virginia* v. *Tennessee,* 148 U.S. 503 (13 Sup. Ct. 728, 734, 37 L. Ed. 537). But this case upheld a compact made in 1803 between Virginia and Tennessee fixing the boundary between the two States, and it said the inhibition in this section only applies to political alliances which may encroach upon the supremacy of the United States. That opinion recites: 'There are many matters upon which different States may agree that can in no respect concern the United States.' A mere reading of this section shows con-

clusively it has no application to such reciprocal agreement as has been entered into between Kentucky and Ohio in an effort to keep their respective tax laws from being evaded."

Certiorari to review the decision of the Kentucky court was denied, 308 U.S. 609 (60 Sup. Ct. 173, 84 L. Ed. 509). See, also, *Field* v. *Barber Asphalt Paving Co.,* 194 U.S. 618 (24 Sup. Ct. 784, 48 L. Ed. 1142).

Plaintiff further contends that the legislature has not authorized defendant to enter into reciprocal agreements or arrangements for the interchange of information with other States for use in connection with the enforcement of Act No. 265, Pub. Acts 1947. It is apparently plaintiff's theory that such authority must be expressly granted and that the statutory provisions defining the powers and duties of the defendant are not sufficient to justify the action in question. Section 2 of the act provides in part as follows:

"The department shall administer the provisions of this act, and it is hereby made the duty of the department to collect, supervise and enforce the collection of all taxes and penalties that may be due under the provisions of this act. The department shall also have the power and authority to make and publish rules and regulations, not inconsistent with this act, in conformity with the laws of this State, necessary and advisable for its detailed administration, to enforce the provisions thereof, and to collect the taxes, fees and penalties herein imposed."

Authority of like nature is conferred on the department of revenue by the act by which it was created, Act No. 122, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 3695-1 *et seq.,* Stat. Ann. 1947 Cum. Supp. § 7.657[1] *et seq.*).

The rule is firmly established that the legislature may authorize the adoption by an administrative

agency, charged with the administration of the provisions of a statute, of rules and regulations to carry out the purpose of the legislature as expressed by it. In *Argo Oil Corporation* v. *Atwood,* 274 Mich. 47, it was said:

"It is too well settled to need the citation of supporting authorities that the legislature, within limits defined in the law, may confer authority on an administrative officer or board to make rules as to details, to find facts, and to exercise some discretion, in the administration of a statute."

See, also, *Warnshuis* v. *State Board of Registration in Medicine,* 285 Mich. 699; *Toole* v. *Michigan State Board of Dentistry,* 306 Mich. 527; *Ranke* v. *Corporation & Securities Commission,* 317 Mich. 304.

The practical necessity for checking returns made by licensees under the act to the defendant department is scarcely open to question. Plaintiff asserts, however, that the requisite information may be obtained other than through the tax-collection authorities of other States. While no specific method is suggested, it may be assumed that defendant might send employees from this State to check with the customers listed in the schedules filed with the monthly returns. Doubtless such method would be expensive and whether the desired information could be obtained in all cases is open to question. The duty of obtaining such information in some feasible manner rests on the defendant. The correctness of reports submitted must be determined on a factual basis. The proper performance of the duties of the defendant involves such requirement. *Kneeland* v. *Wood,* 117 Mich. 174; *Palmer* v. *State Land Office Board,* 304 Mich. 628. The statutory provisions defining the powers and duties of the defendant under the statute in question are sufficiently broad in

scope to permit defendant to obtain information essential to the enforcement of the act from tax authorities in other States as contemplated by the reciprocal arrangements.

Plaintiff in its bill of complaint calls attention to § 11 of Act No. 122, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 3695-11, Stat. Ann. 1947 Cum. Supp. § 7.657[11]), by which act the department of revenue was established, asserting that the action of defendant sought to be enjoined is in violation thereof. Said section reads in part as follows:

"Unless in accordance with a judicial order, as shall be required in the proper administration of this act, no employee or any agent thereof or former employee or agent or anyone connected with or formerly connected with the department shall divulge any facts or information obtained in connection with the administration of said department."

It is apparently plaintiff's theory that no information derived from the returns of licensees under Act No. 265, Pub. Acts 1947 may be divulged by the defendant to any person not an employee of the department unless pursuant to a court order. The bill of complaint alleges that to plaintiff's knowledge or belief no such order has been obtained. It is assumed that such is the fact.

Obviously it was the intention of the legislature to protect taxpayers or licensees making returns to the department from any improper disclosure of facts and information contained in such returns. The authority to impose a restriction of such character has been uniformly upheld. *Oklahoma Tax Commission* v. *Clendinning*, 193 Okla. 271 (143 Pac. [2d] 143, 151 A.L.R. 1035); *In the Matter of Manufacturers Trust Co.* v. *Browne*, 296 N.Y. 549 (68 N. E. [2d] 861) affirming 269 App. Div. 108 (53 N.Y. Supp. [2d] 923); *United States* v. *Dickey*, 268 U.S. 378 (45 Sup. Ct. 558, 69 L. Ed. 1006).

Section 23 of the general property tax law of Michigan (1 Comp. Laws 1929, § 3411 [Stat. Ann. § 7.23]) forbids the use of statements filed with assessing officers for any purpose except "the making of an assessment for taxes as herein provided, or for enforcing the provisions of this act." The interpretation of such statute, involving particularly the question of what may be regarded as a use for enforcing the act, was considered in *Bowman* v. *Montcalm Circuit Judge,* 129 Mich. 608.

The question presented relates to the proper interpretation of the clause of Act No. 122, Pub. Acts 1941, above quoted. The basic rule governing the matter is to ascertain and give effect to the legislative intent. *City of Grand Rapids* v. *Crocker,* 219 Mich. 178; *Boyer-Campbell Co.* v. *Fry,* 271 Mich. 282 (98 A.L.R. 827); *Gardner-White Co.* v. *State Board of Tax Administration,* 296 Mich. 225. This requires that the clause in question shall be read in connection with other pertinent provisions of the act and that a meaning shall be given thereto consistent with the general purpose sought to be accomplished. Was it intended that under no circumstances may the defendant divulge any information derived from the returns of licensees or taxpayers except pursuant to a court order? Or, as defendant contends, may such information be divulged without a court order, when such action is reasonably required in connection with the administration and enforcement of the act? As worded, the clause is ambiguous. Obviously the legislature had in mind two separate and distinct matters; first, compliance with judicial orders requiring disclosure, and, second, the divulging of information contained in returns when necessary to proper enforcement. It is somewhat significant that a provision of like nature was incorporated in section 20 of the general sales

tax act (Act No. 167, § 20, Pub. Acts 1933 [Comp. Laws Supp. 1940, § 3663–20, Stat. Ann. § 7.541]) as follows:

"Unless in accordance with a judicial order, or as shall be required in the proper administration of this act, no member of the board, or agent or employee thereof, or former member, agent or employee, shall divulge any facts or information obtained in connection with the administration of this act."

Likewise section 12 of the intangible tax law, as amended by Act No. 165, Pub. Acts 1945 (Comp. Laws Supp. 1945, § 3658–12, Stat. Ann. 1947 Cum. Supp. § 7.556 [12]) contains a provision practically identical with that quoted above from the sales tax act. Clearly under these provisions a disclosure of information contained in returns of taxpayers or licensees was contemplated when required in the proper administration of the act concerned. The use of the alternative conjunction "or" leaves no question in this regard. The same conclusion follows under section 23 of the general [property] tax law, above cited, as to information derived from taxpayer-statements required to be filed under said law. While the conjunction "or" appearing in the general sales tax act and in the intangible property tax act provisions was omitted from the provision involved in the instant case, we think such provision may properly be construed as indicative of the policy and intent clearly manifested in the provisions of the other acts cited. We conclude that it was not the intention of the legislature to require defendant to obtain court orders in order to permit the divulging of information when necessary to a proper enforcement of said Act No. 122, Pub. Acts 1941. It is significant as bearing on the question of legislative intent that provision for obtaining such court orders was not included therein. The reciprocal arrangements the carrying out of which plaintiff seeks to enjoin are

not prohibited by the statutory provision on which plaintiff relies. The divulging of information to tax-collecting authorities in other States has reference to the enforcement of Act No. 265, Pub. Acts 1947, and permits the obtaining in a proper and legitimate manner of information requisite to such enforcement.

Other matters argued by counsel in their brief are incidental to the issues above considered and determined. Further discussion is unnecessary. For the reasons indicated the order of the trial court dismissing the bill of complaint is affirmed. In view of the nature of the controversy, no costs are allowed.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.