DEPARTMENT OF NATURAL RESOURCES v SEAMAN

1. ADMINISTRATIVE LAW—DELEGATION OF POWERS—RULES AND REGU-
LATIONS—LEGISLATIVE INTENT.

The Legislature may authorize the adoption of rules and regula-
tions to carry out the purpose of legislation by an administra-
tive agency charged with the administration of the provisions
of a statute.

2. ADMINISTRATIVE LAW—COMMERCIAL FISHING—LICENSES—DELEGA-
TION OF POWERS.

The language of the statute authorizing the commission of natu-
ral resources to suspend, abridge, or modify the provisions of
any statute or law governing commercial fishing is not an
unbridled transfer of discretionary and rule-making power by
the Legislature to the administrative body; it limits the rule-
making power of the commission to those areas where it is
necessary for the better protection, preservation, management,
harvesting, and utilization of fisheries, including the right to
limit fishing licenses and fix and determine the qualifications of
licenses (MCLA 308.1b).

3. STATUTES—LEGISLATIVE FUNCTIONS—COMMISSION OF NATURAL RE-
SOURCES—FISHERIES.

Legislation limiting the rule-making power of the commission of
natural resources to those areas where it is necessary for the
better protection, preservation, management, harvesting, and
utilization of fisheries is not an unbridled grant of discretion
and does not operate as an unconstitutional transfer by the
Legislature of the legislative function (MCLA 308.1b, 308.1e).

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law §§ 221–226.
[2, 4] 35 Am Jur 2d, Fish and Game § 45.
   Validity of license statute or ordinance which discriminates against
   nonresidents. 112 ALR 63.
[3] 35 Am Jur 2d, Fish and Game § 31.
   Power of game or fish commission to open or close season. 34 ALR
   826.
[5, 6] 35 Am Jur 2d, Fish and Game § 54.

4. Fish—State Property—Commercial Fishing—Licenses.

The fish in the waters of this state are the property of the state and their taking is a privilege granted by the state; taking fish for commercial purposes is lawful only to the extent that one has a license to undertake such an enterprise and zone management is merely the means by which these considerations are effectuated (MCLA 308.1b, 308.1e).

5. Fish—Fishing Boats—Confiscation.

Fishing boats and gear used in a manner not authorized by license and the fish taken in activities conducted contrary to law are subject to seizure and condemnation and confiscation (MCLA 300.11–300.14).

6. Searches and Seizures—Fishing Boats—Warrantless Search—Probable Cause—Statutes.

Search and seizure of a fishing boat without a warrant is specifically authorized by statute if based upon probable cause to believe that a statutory violation has taken place or is taking place (MCLA 300.12).

Appeal from Iosco, Allan C. Miller, J. Submitted Division 2 February 8, 1974, at Lansing. (Docket Nos. 16365–16367.) Decided May 2, 1974. Leave to appeal applied for.

Complaints by Leonard McDonald and George G. Robson, Conservation Officers, on behalf of the Department of Natural Resources, against Avis M. Seaman and Duane L. Seaman, doing business as McGahan & Seaman, for condemnation and confiscation of a commercial fishing boat, fishing equipment, and fish taken in three separate acts of illegal fishing. Judgment for plaintiff. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Ronald R. Tyler,* Prosecuting Attorney, for plaintiff.

*Nino E. Green,* for defendants.

Before: Bronson, P. J., and Quinn and Van Valkenburg,* JJ.

Van Valkenburg, J. Defendants, commercial fishermen, appeal from three condemnation and confiscation orders entered by the Iosco County circuit court pursuant to complaints brought on behalf of the Department of Natural Resources. The complaints involve three separate acts of illegal fishing undertaken by defendants. The matters were consolidated in circuit court for the convenience of all concerned.

The first complaint involved the May 11, 1972 taking by defendants of some eight boxes of chubs from the waters of Lake Huron on May 11, 1972 by means of some 15,000 feet of small-mesh gill nets. The state sought to condemn and confiscate the gill nets used.

The second complaint involved the September 29, 1972 taking by defendants of yellow perch from the waters of Zone 19 of Lake Huron by means of some 6000 feet of small-mesh gill nets. The state sought to condemn and confiscate the gill nets used.

The third complaint involved the October 10, 1972 taking of some three boxes of yellow perch and one-half box of menominee from the waters of Zone 19 of Lake Huron by means of some 4500 feet of small-mesh gill nets. The state sought to condemn and confiscate the boat used to catch said fish, including the paraphernalia used thereon, the nets used, the boxes of fish and the marker buoys.

The state argued, among other things, that chubs are a protected species, that yellow perch are a protected species except in Zone 22 of Lake

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Huron and that defendants were not licensed to use small-mesh gill nets. Defendants argued that they were licensed to use small-mesh gill nets pursuant to their 1971 license, that they properly relied upon the 1971 license since they had protested the changes on the 1972 license and had not been afforded the statutorily mandated hearing on the 1972 license and that regulations as promulgated did not bar the use of small-mesh gill nets.

On appeal defendants first argue that the Legislature unconstitutionally delegated its legislative authority to an administrative agency. The major thrust of defendants' attack is centered upon the language of MCLA 308.201; MSA 13.1568(1), which provides that the Conservation Commission (now the Commission of Natural Resources—MCLA 16.350 *et seq.;* MSA 3.29[250] *et seq.)* shall have the power to suspend, abridge or modify the provisions of any statute or law of this state governing commercial fishing. Unfortunately, the thrust of this argument misses the mark, since the regulations relied upon by the state were promulgated pursuant to MCLA 308.1b; MSA 13.1491(2). As to the propriety of MCLA 308.1b, *supra,* we do not find the language used is such as to amount to an unbridled transfer of discretionary and rulemaking power by the Legislature to the administrative body. Subsection (1) of MCLA 308.1b, *supra,* clearly defines that the Director of Conservation (now the Commission of Natural Resources):

"when in his [its] opinion it is necessary for the better protection, preservation, management, harvesting and utilization of the fisheries in the waters described in section 1 may limit the number of fishing licenses to be issued under the provisions of this act and fix and determine the qualifications of such licensees."

Subsection 2 further provides that:

"In addition to the requirements of this act and rules promulgated pursuant to this act, the license issued by the director of conservation may contain provisions:

"(a) Fixing the amount of fish to be taken by species and kind.

"(b) Designating the areas in which the licensee shall be permitted to fish.

"(c) Specifying the season when and the depths where the licensee may conduct his commercial fishing operations.

"(d) Specifying the methods and gear which the licensee shall use.

"(e) Specifying other conditions, terms and restrictions which are deemed to be necessary in carrying out the provisions of this act, including but not limited to the right to inspect the licensee's fishing operations in the waters, on board or ashore."

MCLA 308.1e; MSA 13.1491(5) specifically provides that rules may be promulgated as necessary to carry out the provision of MCLA 308.1b; *supra.*

As stated by the Supreme Court in *Roberts Tobacco Co v Department of Revenue,* 322 Mich 519, 527–528; 34 NW2d 54, 58 (1948):

"The rule is firmly established that the legislature may authorize the adoption by an administrative agency, charged with the administration of the provisions of a statute, of rules and regulations to carry out the purpose of the legislature as expressed by it. In *Argo Oil Corporation v Atwood,* 274 Mich 47 [264 NW 285 (1935)], it was said:

" 'It is too well settled to need the citation of supporting authorities that the legislature, within limits defined in the law, may confer authority on an administrative officer or board to make rules as to details, to find facts, and to exercise some discretion, in the administration of a statute'.

"See, also, *Warnshuis v State Board of Registration in Medicine,* 285 Mich 699 [281 NW 410 (1938)]; *Toole v Michigan State Board of Dentistry,* 306 Mich 527 [11

NW2d · 229 (1943)]; *Ranke v Corporation & Securities Commission,* 317 Mich 304 [26 NW2d 898 (1947)]."

While it is equally well established that the Legislature cannot grant unbridled discretion to the administrative agency to promulgate rules, such is not the case here. Clearly the Legislature has limited the rule-making power of the Commission of Natural Resources to those areas where "it is necessary for the better protection, preservation, management, harvesting and utilization of the fisheries" in the described waters. Further, the Legislature defined the nature of additional requirements which could be imposed upon persons seeking commercial fishing licenses. We therefore find that MCLA 308.1b, *supra,* does not operate as an unconstitutional transfer by the Legislature of the legislative function.

Defendants next urge that the "zone management" plan established by the commission in 1970–71 AACS R 299.883 and revised in supplement 71 of the AACS in 1972 exceeds the rule-making authority granted by the Legislature by MCLA 308.1b, *supra,* and MCLA 308.1e, *supra.* Quite apart from the possibility that the zone management plan might well fall within the scope of the general authority to promulgate rules to promote the better protection, preservation, etc. of the fisheries of the defined waters, the Legislature clearly delineated in subsection 2 of MCLA 308.1b, *supra,* that restriction may be placed upon the licenses of commercial fishermen with respect to the area in which the licensee shall be permitted to fish and the methods and gear the licensee shall use. Zone management is merely the means by which these considerations are effectuated.

It is well established that the fish in the waters of this state are the property of the state, and the

taking of such fish is a privilege granted by the state. See MCLA 308.1; MSA 13.1491 and *Aikens v Department of Conservation,* 387 Mich 495; 198 NW2d 304 (1972). It is equally clear that the privilege of taking fish from the waters of this state for commercial purposes is lawful only to the extent that one has a license to undertake such an enterprise. MCLA 308.22; MSA 13.1513. The 1971 license upon which defendants rely authorized the use of two boats, the *Suzanne* and the *Jerry W,* for the purpose of commercial fishing. The license authorized the use by the *Suzanne* of 6000 feet of small-mesh (2-1/2" to 2-7/8") gill nets in Zone 22 only and 12,000 feet of large-mesh (7") gill nets with no zone restrictions. As to the vessel *Jerry W,* the license provided with respect to the kinds, size, and amount of gear that "only that gear authorized under vessel SUZANNE shall be used on the vessel JERRY W". There was the additional provision with respect to the *Jerry W* that: "This boat shall be used in conjunction with fishing activities authorized for the vessel SUZANNE." The license thus made the type and use of gear on the *Jerry W* co-extensive with that authorized for the *Suzanne.* Since it is uncontroverted that all three instances involved the use of small-mesh gill nets in Zone 19, a use not authorized by the license, the fishing operation undertaken by defendants was clearly unlawful on that ground alone.

Defendants' fishing activities being contrary to law within the meaning of MCLA 300.11; MSA 13.1221, the defendants' boat and gear and the unlawfully taken fish were properly subject to seizure pursuant to MCLA 300.12; MSA 13.1222 and condemnation and confiscation pursuant to MCLA 300.14; MSA 13.1224.

Defendants also contend that the search and

seizure of their boat without a warrant on October 3, 1972 was unconstitutional. Quite apart from the fact that defendants never made the formal motion to suppress below necessary to properly preserve this issue for appellate review, it is clear that the contention is meritless. Since the officers who made the search had previously ascertained that the nets retrieved by the *Jerry W* were unlawfully placed in Zone 19 of Lake Huron, and since they observed defendants retrieve those nets, they had probable cause to believe that defendants' boat was being used for unlawful fishing. The officer therefore properly searched and seized the boat pursuant to the provisions of MCLA 300.12; MSA 13.1222, which specifically authorizes searches without a warrant if based upon probable cause to believe that a statutory violation has taken or is taking place.

Affirmed. No costs, a public question being involved.

All concurred.