UNITED STATES STEEL CORPORA-
TION et al., Plaintiffs,

and

Bristol-Myers Co. et al.,
Intervenors-Plaintiffs,

v.

MULTISTATE TAX COMMISSION et
al., Defendants.

No. 72 Civ. 3438 (CLB).

United States District Court,
S. D. New York.

July 8, 1976.

White & Case, by Thomas McGanney, Richard A. Hoppe, Todd B. Sollis, New

York City, for plaintiffs and intervenors-plaintiffs.

Shearman & Sterling, by Richard P. Lasko, New York City, for plaintiff Eltra Corp.

William D. Dexter, General Counsel, Multistate Tax Comm., Olympia, Wash., for defendant.

Eaton, Van Winkle & Greenspoon, by Samuel Greenspoon, New York City, for Multistate Tax Commission.

John D. MacFarlane, Atty. Gen., Denver, Colo., for State of Colorado.

Robert L. Shevin, Atty. Gen., Tallahassee, Fla., for State of Florida.

Ronald Y. Amemiya, Atty. Gen., Honolulu, Hawaii, for State of Hawaii.

Wayne L. Kidwell, Atty. Gen., Boise, Idaho, for State of Idaho.

Theodore L. Sendak, Atty. Gen., Indianapolis, Ind., for State of Indiana.

Frank J. Kelley, Atty. Gen., Lansing, Mich., for State of Michigan.

Robert L. Woodahl, Atty. Gen., Helena, Mont., for State of Montana.

Paul L. Douglas, Atty. Gen., Lincoln, Neb., for State of Nebraska.

Robert F. List, Atty. Gen., Carson City, Nev., for State of Nevada.

Antonio Anaya, Atty. Gen., Santa Fe, N. M., for State of New Mexico.

Allen I. Olson, Atty. Gen., Bismarck, N. D., A. R. Hausauer, Special Asst. Atty. Gen., Bismarck, N. D., for State of North Dakota.

Lee Johnson, Atty. Gen., Oregon Dept. of Justice, Salem, Ore., Theodore De Looze, Chief Tax Counsel, Salem, Ore., for State of Oregon.

John L. Hill, Atty. Gen., Austin, Tex., for State of Texas.

Vernon B. Romney, Atty. Gen., Salt Lake City, Utah, Robert B. Hansen, Utah Deputy

Atty. Gen., Salt Lake City, Utah, G. Blaine Davis, Utah Asst. Atty. Gen., Salt Lake City, Utah, for State of Utah.

Slade Gorton, Atty. Gen., Olympia, Wash., Richard H. Holmquist, Chief Counsel, Seattle, Wash., for State of Washington.

## MEMORANDUM DECISION AND ORDER

Before MESKILL, Circuit Judge, WEINFELD and BRIEANT, District Judges.

BRIEANT, District Judge.

The plaintiff corporations, on behalf of themselves and all multistate taxpayers who have been or may be threatened with interstate audits by the defendant Multistate Tax Commission, seek a declaratory judgment that the Multistate Tax Compact [Prentice Hall State & Local Tax Service (All States Unit) ¶ 6310, *et seq.*] is invalid under the United States Constitution, and a permanent injunction barring its operation and enforcement. Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1332 and 1343(3).

Defendants moved, pursuant to Rule 56, F.R.Civ.P., for summary judgment, which motion was heard before this statutory court convened pursuant to 28 U.S.C. § 2281.

Familiarity with the decision of Judge Tenney of this Court, denying defendants' motion to dismiss the complaint, is assumed. 367 F.Supp. 107 (S.D.N.Y.1973). By a memorandum and order dated February 5, 1974, Judge Tenney granted a motion by various multistate corporations for leave to intervene as plaintiffs, pursuant to Rule 24(b), F.R.Civ.P.[1] The Court further ordered that this suit proceed as a class action with plaintiffs and intervenor-plaintiffs as class representatives.[2]

---

1. Prior to argument of this motion, International Business Machines Corp. and Xerox Corporation withdrew as intervenor-plaintiffs and class representatives, although they remain members of the plaintiffs' class.

2. The terms "multistate taxpayer", or "multistate corporation" as referred to herein comprise those businesses which are engaged in interstate commerce and also are "present" in more than one state for purposes of such state and local taxes as income, capital stock, gross

Plaintiffs contend initially, that upon this record, summary judgment would be inappropriate. They claim that genuine issues exist as to material facts, and assert that their constitutional objections are addressed not only to the Compact itself, but to its operative effects as well. Plaintiffs argue that there must be further discovery before adjudication of these issues. Alternatively, they assert that if summary judgment is appropriate, it should be granted in their favor.

No contention is made that the compact is being administered other than according to its terms, except as to particulars governed by the substantive tax law of the respective party states. The constitutional issues posed by this complaint reduce themselves to questions of law.

Certain of the issues of fact which plaintiffs would seek to raise are purely hypothetical and speculative. As to these issues, plaintiffs have not "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), F.R.Civ.P. Certain other claimed issues of fact are plainly not material to the determination of the merits of the constitutional arguments raised here, although they may be of academic interest to the various states in determining whether to join or continue membership in the Compact.

This litigation commenced with filing of a complaint on August 11, 1972. In October 1973, plaintiffs served their first voluminous set of interrogatories. Since that time, the parties have litigated their respective discovery rights and evidentiary objections. Plaintiffs served a second voluminous set of interrogatories and again the defendants objected. Related cases in various state courts have been stayed pending determination of the issues raised in this suit. Also, there are three related actions pending in other federal district courts. The Judicial Panel on Multidistrict Litigation, by order filed on February 5, 1976, deferred consideration of consolidation and transfer of these cases, pursuant to 28 U.S.C. § 1407, pending disposition of this motion.

The amended complaint seeks declaratory and injunctive relief. Rule 57, F.R.Civ.P., provides that "[t]he court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar." Members of the plaintiffs' class and defendants appear to be prejudiced by the continued operation of the Commission amidst these charges of illegality and constitutional invalidity. For these reasons, and the already prolonged period of time since issue was joined, additional delay for further discovery is unwarranted. Since we find no genuine issues of material fact, summary judgment is appropriate here.

When the amended complaint was filed on January 10, 1973, twenty-one states were signatories to this Compact.[3] The individual defendants in this action are the Executive Director of the Commission and the tax administrators of the twenty-one

receipts, sales, or use taxes. The Multistate Tax Commission and the Compact which created it seeks to improve the administration and expedite the audit and collection of such taxes against non-resident businesses lawfully subject to such taxes. It does not of itself impose any tax, nor withdraw from any taxpayer any procedural right to contest a tax assessment.

**3.** When the complaint was filed, the twenty-one member states were Alaska, Arkansas, Colorado, Florida, Hawaii, Idaho, Illinois, Indiana, Kansas, Michigan, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oregon, Texas, Utah, Washington and Wyoming. Although its Tax Commissioner was not named as a defendant in this action, and no reference has been made to its membership, Alabama apparently has become a party to the Compact, Code of Alabama, tit. 51, § 919, and has adopted Article VIII of the Compact by statute, § 924.

On August 29, 1975, Illinois withdrew from the Compact. California became a member of the Compact on January 1, 1976. The enabling legislation by which California became a member state was contingent, *inter alia,* upon the Commission adopting a by-law requiring that matters voted upon by the Commission receive for approval a majority vote of the number of member states and a majority of the states weighted as to total population based upon the current United States Statistical Abstract. See West's Cal. Revenue and Taxation Code § 38001 (Supp.1976), notes relating to Cal. Stats.1974, c. 93.

respective states, who then served as members of the Commission.

The stated purposes of the Compact are to:

"1. Facilitate proper determination of State and local tax liability of multistate taxpayers, including the equitable apportionment of tax bases and settlement of apportionment disputes.

2. Promote uniformity or compatibility in significant components of tax systems.

3. Facilitate taxpayer convenience and compliance in the filing of tax returns and in other phases of tax administration.

4. Avoid duplicative taxation."

Article III, § 1 permits multistate taxpayers to elect to apportion and allocate their income in accordance with the provisions of the Uniform Division of Income for Tax Purposes Act ("UDITPA"),[4] as embodied in Article IV of the Compact or in accordance with otherwise applicable state law. Article III, § 2 requires each party state which imposes an income tax to allow smaller taxpayers meeting certain requirements to file a short form return and compute the income tax due based upon the percentage of their gross sales within the taxing state.

Article V grants purchasers a tax credit for use taxes, in the amount of sales and use taxes previously paid to other states and their subdivisions. This article also recognizes the validity of exemption certificates issued by other states and their subdivisions.

Article VI establishes the Commission and provides for its membership, voting rights, officers, committees and finances. Article VI, § 1(g) authorizes the Executive Director of the Commission to appoint and discharge personnel "[i]rrespective of the civil service, personnel or other merit system laws of any party state;" and § 1(h) authorizes the Commission to "borrow, accept or contract for the services of personnel from any . . . governmental entity." Section 3 empowers the Commission, in addition to powers conferred elsewhere in the Compact, to:

"(a) Study state and local tax systems and particular types of state and local taxes.

(b) Develop and recommend proposals for an increase in uniformity or compatibility of state and local tax laws with a view toward encouraging the simplification and improvement of state and local tax law and administration.

(c) Compile and publish information as in its judgment would assist the party states in implementation of the compact and taxpayers in complying with state and local tax laws.

(d) Do all things necessary and incidental to the administration of its functions pursuant to this compact."

Article VII provides that where two or more party states or their subdivisions have "uniform or similar" tax laws, the Commission may adopt uniform regulations and forms for their administration. Upon adoption by the Commission, the regulations are to be submitted to the appropriate officials of each state or subdivision for consideration and adoption in accordance with its own law.

Article VIII establishes procedures for interstate joint audits to be performed by the Commission on behalf of and at the request of member states. Article VIII is in force only in those states that specifically enact it by statute. Article VIII, § 2 permits a member state to request the Commission to perform the audit with expenses to be borne by the requesting taxing authority.

---

4. The Uniform Division of Income for Tax Purposes Act ("UDITPA") is a major feature of the Compact and is adopted by those states becoming members of the Compact. UDITPA is not the creation of this Compact, rather it was approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association in 1957. Several of the Compact's member states had adopted UDITPA prior to promulgation of the Compact. In addition, UDITPA is in effect in Kentucky and South Carolina, neither of which are members of the Compact. See 7 Uniform Laws Annotated 365 (1970), 258 (Supp.1976).

Section 3 of Article VIII authorizes the Commission to require the attendance of witnesses to give testimony and produce records and documents. Section 4 grants the Commission the authority to:

"apply to any court having power to issue compulsory process for orders in aid of its powers and responsibilities pursuant to this article and any and all such courts shall have jurisdiction to issue such orders. Failure of any person to obey any such order shall be punishable as contempt of the issuing court. If the party or subject matter on account of which the commission seeks an order is within the jurisdiction of the court to which application is made, such application may be to a court in the State or subdivision on behalf of which the audit is being made or a court in the State in which the object of the order being sought is situated. The provisions of this paragraph apply only to courts in a State that has adopted this article."

Section 5 permits the Commission to decline to perform an interstate audit if the Commission's resources are insufficient, or if it appears otherwise impracticable. Section 5 further authorizes the Commission to make its audit information available to interested party taxing authorities, other than the taxing authority requesting the audit, if the additional interested parties participate in a manner satisfactory to the Commission.

Section 6 of Article VIII imposes a requirement of confidentiality and limits the dissemination of audit information to party states or their subdivisions and to the United States. This information is to be available "in accordance with the laws of the States or subdivisions on whose account the Commission performs the audit, and only through the appropriate agencies or officers of such States or subdivisions." Section 6

also prohibits the Commission from requiring a taxpayer to keep records for any period not otherwise required by law.

Article IX describes an arbitration procedure that the Commission may adopt by regulation "[w]henever the commission finds a need for settling disputes concerning apportionments and allocations by arbitration." [5]

Article X governs the entry into force of the Compact and withdrawal of party states from the Compact. Any state may withdraw if it enacts a statute repealing the Compact.

Article XI provides that the Compact is not to be construed so as to:

"(a) Affect the power of any state or subdivision thereof to fix rates of taxation, except that a party state shall be obligated to implement article III 2 of this compact.

\* \* \* \* \* \*

(c) Withdraw or limit the jurisdiction of any state or local court or administrative officer or body with respect to any person, corporation or other entity or subject matter, except to the extent that such jurisdiction is expressly conferred by or pursuant to this compact upon another agency or body.

(d) Supersede or limit the jurisdiction of any court of the United States."

Article XII states a rule of liberal construction and of severability.

In *Kinnear v. The Hertz Corporation,* 545 P.2d 1186 (Wash.Sup.Ct.1976) (*en banc*), the court was asked to hold, on grounds substantially similar to those advanced here, that Article VIII of the Multistate Tax Compact violated the United States Constitution. The court there affirmed a grant of summary judgment in favor of Kinnear, as Director of the Department of Revenue of

---

**5.** The legislation that enabled California to become a member state expressly provided that California would not continue as a member if the Commission placed in effect the provisions of Article IX, whether the Commission acted voluntarily or under court order. See West's Revenue and Taxation Code § 38001 (Supp.

1976), notes relating to Cal.Stats.1974, c. 93. We regard Article IX as being of no more than academic interest. Unless California changes its position, it is unlikely to be implemented, and we do not regard plaintiffs as threatened with its application. Any questions raised thereby had best be held for a future day.

the State of Washington, and the Multistate Tax Commission.

Plaintiffs contend that the entire Compact is invalid for want of Congressional approval as required by Article I, § 10, clause 3 of the United States Constitution, which provides:

"No State shall, without the Consent of the Congress . . . enter into any Agreement or Compact with another State, or with a Foreign Power. . ."

Although absolute in its terms, the Compact Clause has not been construed as requiring Congressional approval of all interstate agreements. *Virginia v. Tennessee,* 148 U.S. 503, 13 S.Ct. 728, 37 L.Ed. 537 (1893) states the test applicable in determining whether a particular interstate agreement requires Congressional approval:

"Looking at the clause in which the terms 'compact' or 'agreement' appear, it is evident that the prohibition is directed to the formation of any combination tending to the increase of political power in the States, which may encroach upon or interfere with the just supremacy of the United States." 148 U.S. at 519, 13 S.Ct. at 734.

In *Virginia v. Tennessee, supra,* the Court found that the boundary agreement there in issue had received Congressional approval. Although unnecessary to the determination of the issues in that case, the rule stated there has been accepted and followed as the test for the need for Congressional approval. The same test has been applied again most recently in *New Hampshire v. Maine,* —— U.S. ——, 96 S.Ct. 2113, 48 L.Ed.2d 701 (1976).

Both *Virginia v. Tennessee, supra,* and *New Hampshire v. Maine, supra,* involved agreements between neighboring states for the settlement of disputed state boundaries. The test which *Virginia v. Tennessee* establishes has been applied in a variety of other contexts. In matters related to state taxation, this test has been applied in upholding the constitutionality of reciprocal legislation and interstate agreements governing tax exemptions and the exchange of tax record information. See, *e. g., Bode v. Barrett,* 412 Ill. 204, 106 N.E.2d 521 (1952), aff'd. 344 U.S. 583, 73 S.Ct. 468, 97 L.Ed. 567 (1953); *Dixie Wholesale Grocery Company v. Martin,* 278 Ky. 705, 129 S.W.2d 181, *cert. denied* 308 U.S. 609, 60 S.Ct. 173, 84 L.Ed. 509 (1939); *Roberts Tobacco Co. v. Department of· Revenue,* 322 Mich. 519, 34 N.W.2d 54 (1948).

Applying the test of *Virginia v. Tennessee* and *New Hampshire v. Maine, supra,* to the Compact here in issue, the Multistate Tax Compact does not increase the political power of the party states. The Commission is vested with no taxing authority; the taxes which it administers are only those imposed by the respective states and subdivisions in accordance with state law.

Nor does the Commission have legislative power; it may propose model regulations where two or more party states or their subdivisions have uniform or similar laws. Such proposals may be adopted, modified, or rejected by the duly authorized tax officials of the affected states.[6]

The Commission does have the power to conduct audits, but only at the request of a party state or its subdivision. In aid of this power, the Commission is authorized to seek the compulsory process of courts having jurisdiction within the party states. The Commission does not have the authority to enforce any tax liability; that, too, remains within the jurisdiction of the respective taxing authorities. Any grievance that a taxpayer may have with the results of a Commission audit or the tax liability resulting therefrom is justiciable in the taxing state in accordance with the same proce-

---

**6.** Proposing model uniform legislation is a function performed by such organizations as the National Conference of Commissioners on Uniform State Laws, bar organizations and public interest groups. As with the proposals of such groups, the recommendation of the Commission may be persuasive, but the decision whether to enact the recommended legislation or regulations lies solely with those officials designated by each state's constitution and laws.

dures governing the grievances of intrastate taxpayers.

■ Similarly, it is clear that the Compact does not encroach upon or interfere with federal supremacy. Although Congress may be constitutionally empowered by the Commerce Clause, Article I, § 8, clause 3, to legislate and regulate the interstate administration of state tax systems, Congress has yet to exercise this power. Plainly, this failure to act has not preempted the states' powers in the field of multistate tax administration. Since the states may act individually in this area, there is no greater encroachment upon the federal interest by their acting cooperatively. Notwithstanding this Compact, Congress could enact comprehensive legislation that would preempt the power.

In *Virginia v. Tennessee, supra,* 148 U.S. at 518, 13 S.Ct. at 734, the Court observed that "[t]here are many matters upon which different states may agree that can in no respect concern the United States." Although the problems of multistate tax administration might be a concern of federal interest, that concern has not been evidenced by legislation in this area. As yet, there are no federal statutes or expressed Congressional policies with which this Compact could interfere. In the event of federal preemption in the future, defendants must withdraw *pro tanto* in order that any such federal statute shall be supreme.

Plaintiffs next contend that the Compact violates the Commerce Clause in several respects. Plaintiffs' first contention in this regard is that Congress, under its power to regulate interstate commerce, has preempted the field. As we noted previously regarding the issue of encroachment upon federal supremacy, there has been no such federal preemption. It is now established that

> ". . . federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that Congress has unmistakably so ordained."

*Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1216, 10 L.Ed.2d 248 (1963). See also *Merrill Lynch, &c. v. Ware,* 414 U.S. 117, 139, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973). There is nothing inherent in the problems of multistate tax administration that would require federal regulation, nor has Congress yet identified these problems as a matter of peculiar federal concern.

■ Second, plaintiffs contend that the Compact imposes an undue and unreasonable burden upon interstate commerce.

> "It is a truism that the mere act of carrying on business in interstate commerce does not exempt a corporation from state taxation. 'It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business.' *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 254 [58 S.Ct. 546, 82 L.Ed. 823] (1938)." *Colonial Pipeline Co. v. Traigle,* 421 U.S. 100, 108, 95 S.Ct. 1538, 1543, 44 L.Ed.2d 1 (1975).

Indeed, plaintiffs do not contend that the Commerce Clause bars imposition of the respective state taxes which the Commission is charged with administering for the benefit of member states. A necessary correlative of the power to impose taxes is the power to audit, and determine the tax liability properly for each taxpayer.

■ The stated purposes of this Compact, *supra,* are to promote uniformity among state tax systems, ease taxpayer compliance and minimize the risk of duplicative taxation of the multistate taxpayer. Plaintiffs contend that the Compact promotes disparity, not uniformity. In support of this contention, plaintiffs argue that the voluntary nature of Compact membership and the fact that only twenty-one states have joined necessarily limits its reach. Plaintiffs further argue that the advisory powers granted to the Commission are insufficient to override the differences in the substantive tax laws of the party states. Plaintiffs' characterization here of a compact binding only a loose and powerless confed-

eration stands in sharp contrast to their simultaneous characterization of the Compact as intruding upon the federal supremacy and increasing the political power of the states. That the Compact may promise more than it has as yet achieved is no ground for finding unconstitutionality. The member states have ceded no sovereignty over tax matters to the Commission. The fact that the Compact might promote a consensus among party states on principles of allocation of revenues or other matters, does not create an impermissible burden upon interstate commerce. This is so for at least two reasons: first, even without the Compact, the states could enact parallel or uniform tax legislation, as has been done with UDITPA itself; and second, any agreement between two or more states to observe an identical principle of state tax law diminishes the existing possibility of fifty disparate state tax results. In sum, we find no merit to the contention that the Compact is an unconstitutional burden upon interstate commerce.

Plaintiffs' next argument charges that the Compact discriminates against multistate taxpayers, and for that reason is invalid under the Commerce Clause, the Equal Protection Clause and the Due Process Clause. Specifically, they allege three areas of discriminatory treatment: first, that Commission auditors are not subject to the civil service requirements of the party states; second, that Commission auditors would not be subject to state criminal penalties for disclosure of confidential audit data; and third, that the subpoena powers of the Commission exceed those of the individual states and therefore exceed the subpoena powers to which intrastate taxpayers are subjected.

Plaintiffs contend that the difference in auditor qualifications discriminates against multistate taxpayers because Commission audits may be conducted by auditors who are not as knowledgeable about the substantive tax law of the particular state on whose behalf they are acting. The Compact authorizes the Executive Director to assemble a staff for the Commission from two sources: first, he is authorized to appoint personnel without regard to any state's civil service requirements; second, he is authorized to contract for the services of personnel from other governmental bodies who presumably would be subject to civil service requirements of the individual employer states. If the Executive Director contracts for the use of personnel from a particular state to participate in a joint audit for that state, the taxpayer would have no grievance with regard to the qualifications of the auditor.

Although the Compact appears to create a distinction between the qualifications for Commission personnel charged with conducting multistate audits and those civil service auditors who perform similar audits of intrastate taxpayers, this distinction is of no consequence. Commission auditors, as well as their civil service counterparts, are charged with auditing taxpayers and fixing tax liability in accordance with the tax laws and regulations of the respective states. Each auditor is bound by the same law. If a taxpayer's liability is computed erroneously whether by a Commission auditor or by a state civil service auditor, the taxpayer is aggrieved and has recourse to all those remedies the taxing state provides. It is not a demonstrated principle that tax auditors having civil service status work with any greater or less diligence or ability than those who lack job tenure.

In *American Motorists Insurance Company v. Starnes*, —— U.S. ——, 96 S.Ct. 1800, 48 L.Ed.2d 263 (1976), the Court upheld a Texas statute that appeared to limit venue in suits against domestic corporations by requiring a preliminary venue hearing while denying foreign corporations any such hearing, thereby permitting greater latitude in suits against foreign corporations. In so holding, the Court stated:

" '. . . [I]t is fundamental rights which the 14th Amendment safeguards, and not the mere forum which a state may see proper to designate for the enforcement and protection of such rights.

Given, therefore, a condition where fundamental rights are equally protected and preserved, it is impossible to say that the rights which are thus protected and preserved have been denied because the state has deemed best to provide for a trial in one forum or another. It is not, under any view, the mere tribunal into which a person is authorized to proceed by a state which determines whether the equal protection of the law has been afforded, but whether in the tribunals which the state has provided equal laws prevail.' *Cincinnati St. Louis R. Co. v. Snell,* 193 U.S. 30, 36–37 [24 S.Ct. 319, 48 L.Ed. 604] (1904). We are not confined to the language of the statute under challenge in determining whether that statute has any discriminatory effect. Just as a statute nondiscriminatory on its face may be grossly discriminatory in its operation, . . . so may a statute discriminatory on its face be nondiscriminatory in operation." At ——, 96 S.Ct. at 1804.

Here, plaintiffs may be subjected to audits performed by different personnel. The different auditors are required to apply the same substantive tax law and errors are reviewable by the same tax appeal procedures. We find no merit to the plaintiffs' constitutional claim on this ground.

Plaintiffs next contend that Commission auditors might not be subjected to state criminal penalties imposed for disclosure of confidential audit data since any such criminal violation may occur under circumstances beyond the state's criminal jurisdiction. Article VIII, § 6 provides that the "[a]vailability of information shall be in accordance with the law of the states or subdivisions on whose account the commission performs the audit." As a result, Commission audit information would be publicly available only to the same extent as it would be had the taxing authority requesting the Commission audit performed that audit itself. If state law bars disclosure of certain information under particular circumstances, that prohibition would apply to Commission audit information under like circumstances. Whether the audit is performed by Commission auditors or state auditors, the prohibitions against disclosure are the same.

As taxpayers, plaintiffs are justifiably concerned with the confidentiality of audit information, but, as to these prohibitions against disclosure, plaintiffs are not subjected to discriminatory treatment. The enforcement of criminal sanctions is a concern of the public prosecutor, as to which these plaintiffs lack standing. Any discrimination in criminal penalties imposed on others, or whether others are subject to criminal penalties at all, would not prejudice these plaintiffs. We may, and do, assume that Commission auditors, acting as agents for the party states, will obey the laws of the states on whose behalf they are acting, and perform their duties honorably.

Plaintiffs next contend that the Compact discriminates against multistate taxpayers in that it vests in the Commission broader subpoena powers than those possessed by the individual states. Generally, a person or corporation subject to a state court's *in personam* process may be compelled to produce books and records in his custody and control, whether located within or without the court's jurisdiction. A corporation that is present in a state by reason of doing business there, and accordingly, amenable to taxation, is also subject to the *in personam* process of the taxing state's courts. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Therefore, a multistate corporation may be required to produce its relevant books and records in any state in which it is present and therefore taxable.

The Commission's subpoena power is no broader than that of the party states. The Commission has no powers of subpoena or contempt apart from the powers of the state courts whose jurisdiction it invokes. Each party state asserting a claim of tax liability might subpoena such books and records as are necessary to determine the taxpayer's liability. The Commission is merely empowered to seek from the courts

compulsory process to enable it to perform the same task in a coordinated fashion for the joint benefit of the requesting taxing authorities.[7]

Although we do not find the Commission's powers broader than those of the constituent states, to the extent that the Commission may be enabled to use its subpoena powers in ways in which no single state can, we find that this difference does not constitute an invidious discrimination against multistate taxpayers. Different and more complex problems are raised in the taxation of multistate and multinational corporations that are not encountered in the taxation of intrastate businesses. Specifically, multistate taxation raises the risk of duplicative taxation, and the problem of proper allocation of tax bases among the several taxing jurisdictions, issues which do not arise where a business is subject to taxation in only one jurisdiction. The different treatment, if any, accorded multistate taxpayers by the Compact is a permissible legislative response to what is perceived as the different circumstances of the multistate taxpayer. See *Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973).

Plaintiffs' final contention is that the Compact, or that portion of the Compact relating to the production of books and records for joint audit purposes, violates the Fourth Amendment in that it compels them to disclose data to an extralegal and unlawfully constituted body, that is, the Multistate Tax Commission. We find no merit to this contention. For the reasons stated above, we find the Compact to be lawful, and the Compact's creature, the Commission, to be a lawfully constituted body.

Such other Fourth Amendment rights as may be asserted by the conclusory allegations of the amended complaint are not ripe for adjudication. The Fourth Amendment affords corporations some measure of protection against unreasonable search and seizure. A governmental body might, in a given case, violate those rights by an abuse of its subpoena power. Whether particular demands for the production of books and records are unreasonable can only be determined in the context of a demand for the production of particular records of a taxpayer for the purposes of a particular joint audit. The Commission must seek the process of a court to require production of books and records. Determination of whether a particular demand is unreasonable is best reserved for litigation in the court issuing process in a given case. None of the representative plaintiffs here have been subpoenaed to produce documents.

Plaintiffs' prayer for relief is denied in all respects, and pursuant to Rule 58, F.R. Civ.P., the Clerk will enter judgment in favor of the defendant.

So Ordered.

---

7. This practice will be of benefit to multistate taxpayers. In these days of the computer, many multistate taxpayers, present in a number of states, tend to centralize their record keeping in one place, often remote from a taxing authority. Such a remote taxing authority can, under familiar constitutional principles, compel attendance before it of competent employees having knowledge, together with sufficient underlying documentation to permit spot check verification of the computerized data. Such personnel and records cannot be in more than one place at a time. Common sense dictates, therefore, that examinations should take place where the records are kept. The Compact was a common sense approach to solve the chaos which would result if taxpayer's personnel, or alternatively, state taxing authorities were required to spend most of their time on the road.