## GALVIN *v.* DETROIT STEERING WHEEL & WINDSHIELD CO.

1. MASTER AND SERVANT—CORPORATIONS—CONTRACTS—SALARY—PAROL EVIDENCE—ORAL AGREEMENT—FRAUDS, STATUTE OF.

   Where several incorporators entered into a written contract providing that plaintiff should have charge of and manage the foundry of a corporation which was not yet organized, and it was not determined what his salary or term of employment should be, in an action for wrongful discharge plaintiff was entitled to introduce testimony to show a subsequent oral agreement of the corporation to pay him $1,500 a year, and that the term of employment should be a year: nor was the contract void under the statute of frauds, performance being possible within a year.[1]

2. CORPORATIONS—MANAGER—PRESIDENT—PRINCIPAL AND AGENT.

   Evidence that the president of a corporation took charge of and conducted its business, made contracts and performed the duties of general manager, that all the officers and directors knew plaintiff had been employed to superintend the foundry, and knew of payments of salary that were made to plaintiff, supported the finding of the jury that the president was authorized to hire plaintiff.

3. SAME—DE FACTO ORGANIZATION—RECORDING ARTICLES.

   Whether or not the corporate organization was perfected before the execution of plaintiff's contract of employment, defendant was liable for services thereafter performed under the contract, its officers and directors having notice, and the parties having dealt with defendant as a corporation.

Error to Wayne; Murphy, J. Submitted June 20, 1913. (Docket No. 41.) Decided July 18, 1913.

[1] As to the time for which contracts of employment may be made on behalf of a corporation by its officers, directors, and agents, see note in 49 L. R. A. 471.

Assumpsit by Thaddeus Galvin against the Detroit Steering Wheel & Windshield Company for breach of a contract of employment. Judgment for plaintiff. Defendant brings error. Affirmed.

*Choate, Webster, Robertson & Lehmann,* for appellant.

*Washington I. Robinson,* for appellee.

STONE, J. A reference to the declaration and bill of particulars in this case shows that the action was in assumpsit to recover a balance claimed to be due plaintiff for salary due from the defendant by reason of a wrongful discharge of plaintiff from service. The balance claimed covered the period from March 15, 1910, to November 11, 1910, according to the terms of an alleged contract entered into whereby plaintiff was to be employed for the period of one year from and after November 11, 1909 (upon the trial amended to read November 12, 1909), at the rate of $1,500 per year. Also for money claimed to be due plaintiff from defendant for supplying basic mixture and manufacturing manganese bronze according to the terms of a certain contract. There was originally a further claim for certain royalties due the plaintiff on certain patents under a written contract between the parties, but during the trial, after a considerable colloquy between the court and counsel, all of the last-named claim was withdrawn from the consideration of the jury; the court in the presence of the jury saying:

"Then, by consent, all the testimony in the case given by the plaintiff in behalf of the plaintiff and on behalf of the defendant relating to the issue of patents is stricken out, gentlemen of the jury, and withdrawn from your consideration, and you are to endeavor to remove it from your minds as if it had not been introduced at all."

The case thereafter proceeded under the claims for salary, and the amount due for the manufacture of manganese.

It appears that for a number of years prior to November, 1909, the plaintiff and his son were the principal owners of the Galvin Brass Company, engaged in manufacturing automobile windshields, at Detroit. Albert S. Keen and two others were copartners manufacturing automobile steering wheels.

On November 4, 1909, a written agreement was signed by the plaintiff and the members of the said copartnership. This agreement provided for the formation of a corporation to be known as the Detroit Steering Wheel & Windshield Company on or before January 1, 1910. It also provided that the plaintiff should be elected vice president of the company and should have charge of its foundry. Under date of November 11, 1909, the articles of incorporation of the defendant company were signed and acknowledged. They were filed with the secretary of State November 13, 1909, and with the county clerk November 16, 1909. Of the 5,000 shares of stock subscribed for, Albert S. Keen held individually 1,750 and as trustee 1,000 shares, and he was elected the president of the company. It was the claim of the plaintiff, and he gave evidence tending to show, that Albert S. Keen from the start handled the business of the corporation and made the contracts. There is some question whether the articles of incorporation were in fact executed on November 11th or 12th.

The claim of the plaintiff upon the trial was that on November 12, 1909, and after the articles were executed, and after Mr. Keen had been elected the president, a verbal contract of employment of plaintiff was entered into with defendant company, acting by and through Mr. Keen, its president, by the terms of which plaintiff was to have charge of defendant's foundry for one year with a salary of $1,500; that

he entered upon the performance of the contract of employment, receiving his pay weekly at the rate of $1,500 a year, and continued in such employment until March 21, 1910, when he was discharged by the president. Upon the trial Mr. Keen swore that he hired the plaintiff but claimed that it was a monthly hiring. He did not deny, but testified, that plaintiff entered the employment of defendant and continued until he was by him discharged in March, 1910. There was much conflict in the evidence.

The case was submitted to the jury upon a full and fair charge, and a verdict was rendered for the plaintiff for the remainder of the year's salary, amounting to $1,046.46; the jury having disallowed the claim for manganese. There was a motion for a new trial which was denied, which denial was excepted to, and the defendant has brought the case here for review upon writ of error.

The statement of the facts in appellant's brief is very unsatisfactory, and there seems to have been no attempt to comply with rule 40. We have, however, examined the record and shall consider the three principal questions in the case.

Under the assignments of error based upon the refusal of the court to direct a verdict for the defendant at the conclusion of plaintiff's testimony and at the conclusion of the entire case, counsel for appellant say:

"These assignments raise the main question in this case as to the oral agreements being within the statute of frauds, as to the authority of the officer of the defendant company to make the agreements, and as to the validity of the agreements because made before the complete organization of the company. There are three verbal or oral agreements testified to by plaintiff and denied by defendant, one on November 4, 1909, another November 11, 1909, and another on November 12, 1909. The written agreement of No-

vember 4, 1909, provided for the employment of the plaintiff generally but is wholly silent as to the salary or term of employment."

1. We have already stated that the agreement of November 4, 1909, made before the articles of incorporation were executed, and made not by the defendant but by the proposed incorporators, provided that the plaintiff should have charge of the foundry. We agree with counsel that it was entirely silent as to salary or term of employment. We do not understand that the plaintiff relies upon this agreement or upon any oral agreement of that date for recovery here, but upon an oral agreement claimed to have been made on November 11th or 12th (the exact date being indefinite) and after the articles were executed and after Mr. Keen was elected president. Notwithstanding any agreement which may have existed between the incorporators, it is difficult to understand why a subsequent valid oral agreement may not have been made with the defendant. That was the question which the court submitted to the jury. The court in its charge said:

"It is the plaintiff's claim that he had an oral contract of employment for the term of one year, beginning November 12, 1909, at a fixed sum of $1,500 a year. And it is his claim that, that contract having been entered into, he was improperly discharged on the 21st day of March, 1910."

We cannot agree with the contention that the statute of frauds has any application here. The only agreement submitted to the jury was one to be performed within one year.

2. Was there authority in Mr. Keen, under the circumstances, to make the agreement claimed for the defendant? The record is silent as to any action on the subject by the directors. The plaintiff claimed and testified that from the first Mr. Keen took charge of and handled the business and made the contracts

for the defendant and was really the general manager, and that all of the directors and officers knew of plaintiff's employment and of payments made to him. We think there was evidence of authority in Mr. Keen, as president and manager, to make the contract, and that the following cases support that view: *Adams Mining Co.* v. *Senter,* 26 Mich. 73-76; *Eureka Iron & Steel Works* v. *Bresnahan,* 60 Mich. 332 (27 N. W. 524) ; *Whitaker* v. *Kilroy,* 70 Mich. 635 (38 N. W. 606) ; *Ceeder* v. *Lumber Co.,* 86 Mich. 541 (49 N. W. 575, 24 Am. St. Rep. 134) ; 10 Cyc. p. 909.

It may also be said that the acts of Mr. Keen were ratified by the directors and officers. We have examined the cases cited by appellant, and do not think that they are controlling of the instant case.

3. Was the claimed contract made before the complete organization of the defendant company? The articles of incorporation are not contained in the record. We understand, however, that the defendant was organized under the provisions of Act No. 232, Pub. Acts 1903 (4 How. Stat. [2d Ed.] § 9532 *et seq.*). Section 9 of that act provides as follows:

"Before any corporation, organized under this act to operate in this State, shall commence business, the president shall cause the articles of association to be recorded, at the expense of said corporation, in the office of the secretary of State of this State, and in the office of the county clerk of the county in which such operations are to be carried on."

We are of opinion that what we said and held in *Newcomb-Endicott Co.* v. *Fee,* 167 Mich. 574 (133 N. W. 540), is applicable here, and that this question is governed by that case.

We have examined the other assignments of error. Many of them are not based upon any exception. The charge of the court sufficiently covered such of defendant's requests to charge as correctly stated the

law applicable to the case.   The court did not err in refusing the motion for a new trial.

We find no prejudicial error in the record, and the judgment of the circuit court is affirmed.

STEERE, C. J., and MOORE, McALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.