BERGY BROTHERS, INC v ZEELAND FEEDER PIG, INC

Docket No. 65345. Argued November 10, 1981 (Calendar No. 6).—
Decided December 20, 1982.

Bergy Brothers, Inc., brought an action against Zeeland Feeder
Pig, Inc., and its president, George Spencer, for money owed by
the defendants for feed delivered by the plaintiff to the defen-
dants' pig farm. The Ottawa Circuit Court, James E. Townsend,
J., held that the defendants were estopped from claiming that
the defendant corporation had no power to contract with the
plaintiff after its charter was voided for failure to file reports
and pay fees and that the plaintiff was entitled to judgment
against the corporation. At the time of trial, the corporate
charter had been revived. The trial court also found Spencer
personally liable as a corporate officer of a corporation in
default, liable for breach of fiduciary duties as a corporate
officer and director, and liable as a common-law partner. The
Court of Appeals, R. B. Burns, P.J., and Allen and MacKenzie,
JJ., affirmed on the partnership theory (Docket No. 77-2795).
The defendants appeal.

In an opinion by Justice Kavanagh, joined by Chief Justice
Fitzgerald and Justices Williams, Levin, and Coleman, the
Supreme Court *held:*

Corporate obligations incurred during a period of forfeiture
of the corporate charter by a corporation which is later rein-
stated by the filing of reports and payment of fees and penalties
are binding upon the corporation only and not upon corporate
officers personally. The judgment against the corporation is
affirmed and the judgment against the defendant Spencer is set
aside.

1. The defendant corporation did not lose its de facto exis-
tence upon the automatic voiding of its charter. The statute

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 19 Am Jur 2d, Corporations §§ 1651, 1652, 1655.
Reinstatement of repealed, forfeited, expired, or suspended corpo-
rate charter as validating acts in interim. 13 ALR2d 1220.
[3] 19 Am Jur 2d, Corporations § 1650.
[4] 19 Am Jur 2d, Corporations §§ 1341-1349.

which provided for forfeiture of a corporate charter must be read in light of the statute which provided for retroactive reinstatement. The effect of the reinstatement statute was to make the voidance of a charter more in the nature of a suspension of corporate privileges than an absolute termination of corporate existence. Reinstatement operated to validate all contracts entered into during the period of forfeiture, giving the corporation de facto existence during the period, and precluding liability of corporate officers as common-law partners. The forfeiture statute was not intended to have a separate penal effect upon corporate officers; its basic purpose was to terminate defunct corporations and to encourage the payment of fees and the filing of reports.

2. The statute which enabled a creditor to sue a corporate director on behalf of the corporation for a breach of duty to the corporation has no application in a suit brought by a creditor of a corporation on his own behalf.

Justice Ryan, joined by Justices Williams, Levin, and Coleman, concurring, wrote separately to explain that Spencer is not personally liable for debts incurred in the name of the corporation because the penalty provision of the General Corporation Act for failure to file annual reports or pay privilege fees are not applicable in the circumstances of this case. The penalty provisions apply to the initial two years of default by a corporation, during which its charter remains valid. Zeeland Feeder Pig became indebted to the plaintiff subsequent to the voidance of its charter.

1. The General Corporation Act provided that after ten days of neglect or refusal to file an annual report or pay privilege fees by a corporation, corporate powers would be suspended and personal liability for debts incurred in the name of the corporation during the period of neglect or refusal would be imposed on the officers of the corporation. The suspension could be remedied by filing the delinquent reports and remitting the overdue fees. The act also provided that after two consecutive years of neglect or refusal the corporate charter was revoked by operation of law. This did not signal the complete termination of the corporation, however; it merely marked the end of the corporation's existence as an ongoing concern, and the corporation was granted three years to wind up its affairs. Even then, the corporation could be revived and its corporate charter reinstated by the payment of a penalty in addition to the delinquent fees and the filing of each intervening annual report. Upon revival, the powers of the corporation were retro-

actively reinstated to validate all corporate acts which occurred while the charter was void.

2. The act must be viewed in its entirety and its provisions read together to effectuate the legislative intent. Penalty provisions are to be strictly construed. The penalty provisions of the act apply only through the initial two years of default. Thereafter, the three-year windup period begins, a new corporate legal status marking a further progression in the statutory dissolution process commences, and all corresponding liabilities and disabilities are governed by provisions pertaining to the windup process. The penalty provisions are not expressly carried over into these provisions. The omission is indicative of the Legislature's intent to limit individual liability for corporate obligations to those incurred within the initial two-year period of default.

96 Mich App 111; 292 NW2d 493 (1980) affirmed in part and reversed in part.

OPINION OF THE COURT

1. CORPORATIONS — CHARTERS — FORFEITURE — LIABILITY.

Corporate obligations incurred during a period of forfeiture of the corporate charter for failure to file reports and pay fees are binding upon the corporation only and not on its officers individually when the corporation is revived by filing and payment; the statute which provided for forfeiture must be read in light of the statute which provided for automatic reinstatement, the effect of which was to give the corporation de facto existence, making the forfeiture a suspension of corporate privileges rather than a termination of corporate existence (MCL 450.431, 450.432; MSA 21.248[1], 21.248[2], superseded by 1972 PA 284).

2. CORPORATIONS — CHARTERS — FORFEITURE — LIABILITY.

The statute which permitted reinstatement of a corporation which was in default upon the payment of fees and the filing of reports operated to validate all contracts entered into by the corporation during the period of forfeiture and thereby gave the corporation de facto existence during that period, the application of a common-law theory of partnership which would place the liability for such contracts on the corporate officers is precluded (MCL 450.431, 450.432; MSA 21.248[1], 21.248[2], superseded by 1972 PA 284).

3. CORPORATIONS — DIRECTORS — FIDUCIARY DUTY — ACTIONS.

The statute which enabled a creditor of a corporation to sue a

corporate director on behalf of the corporation for a breach of duty to the corporation was not applicable in a suit brought by a creditor of the corporation on his own behalf (MCL 450.47; MSA 21.47, superseded by 1972 PA 284).

CONCURRING OPINION BY RYAN, J.

4. CORPORATIONS — CHARTERS — VOIDANCE — LIABILITY.

*Corporate officers were not personally liable for debts incurred in the name of a corporation after its charter had been voided; the section of the General Corporation Act which provided for such a penalty applied only to the initial two-year period of corporate default, while the period following automatic voidance of a corporate charter was governed by separate sections in which the penalty provisions were not expressly included (MCL 450.75, 450.87, 450.91; MSA 21.75, 21.87, 21.91, since repealed, 1972 PA 284).*

*Landman, Luyendyk, Latimer, Clink & Robb* (by *Jon D. VanderPloeg)* for plaintiff.

*Randolph McCarthy, Jr. (David W. McMorrow,* of counsel), for defendants.

KAVANAGH, J. We are called upon in this case to determine the liability of an individual officer for debts incurred in the name of a corporation during the period in which the corporation was in default in the filing of annual reports and the payment of fees.

The trial court found personal liability on three separate bases. It found that defendant Spencer was personally liable as a corporate officer under MCL 450.87; MSA 21.87; under MCL 450.47; MSA 21.47 for breach of fiduciary duties as an officer and director; and under the common-law partnership theory. In affirming, the Court of Appeals said:

"We find personal liability on the partnership theory and accordingly will not consider the two statutory

bases." *Bergy Brothers, Inc v Zeeland Feeder Pig, Inc,* 96 Mich App 111, 118; 292 NW2d 493 (1980).

We granted leave to test the correctness of these rulings, and, being persuaded that they are erroneous, we reverse.

George Spencer and Cornelius Hoezee formed Zeeland Feeder Pig, Inc., in 1967, each owning 50% of the stock. Spencer was president, Hoezee was secretary-treasurer, and Richard Nagy was added as the third director. Initially, Spencer devoted a considerable amount of time to managing the affairs of the corporation. When his parents died in the latter part of 1969, Spencer was forced to devote his time to the operation of the family farm rather than to the operation of the corporate pig farm. At some point prior to August 1, 1971, Spencer attempted to convey his interest in the corporation to Hoezee and Nagy; the transfer was never consummated, but it appears that thereafter Spencer participated little in the activities of the corporation.

The debt at issue in this case is for feed delivered by plaintiff to the pig farm between August 10, 1971, and September 7, 1972. The corporate charter was voided on May 15, 1971, for failure to file reports and pay fees in 1969, 1970 and 1971. After Spencer withdrew from active participation in the corporate affairs, the corporation business was largely conducted by Nagy and Hoezee. Nagy was not successfully brought into the suit because of a defect in procedure, and Hoezee was not brought in because he was rendered incompetent by a stroke in August, 1972.

In cases such as these, it is often a difficult question whether the debtor considered that he was dealing with the corporation or the individual.

This issue is not present here. The creditor, Bergy Brothers, vigorously maintained throughout trial that it dealt only with the corporation; this position was taken in response to Spencer's assertion that much of the feed for which money is owing was delivered and used for the personal operations of Hoezee and Nagy rather than for the corporation's affairs.

The defendant Spencer asserts that he has no personal liability for this debt either because it was the debt of the corporation only, or because, while formally a corporate debt, it was in reality a debt of a business enterprise (a partnership of Hoezee and Nagy) in which he had no interest.

The plaintiff maintains that when the corporation failed to file its annual report and pay its franchise fee, pursuant to the statute its corporate existence was extinguished, and defendant Spencer as an officer and director became personally liable for all debts contracted in the corporate name. Further, defendant Spencer did participate in the business of the corporation at all times whether the charter was in effect or not and accordingly is responsible for the debt.

Of the two statutory bases for liability determined by the trial court, we are satisfied that one, under MCL 450.47; MSA 21.47, since repealed, 1972 PA 284, is patently erroneous.

That statute read:

"Sec. 47. Directors; as fiduciaries and trustees. The directors of every corporation and each of them, in the management of the business, affairs, and property of the corporation, and in the selection, supervision and control of its committees and of the officers and agents of the corporation, shall give the attention and exercise the vigilance, diligence, care and skill, that prudent men use in like or similar circumstances.

"Action may be brought by the corporation, through or by a director, officer, or shareholder, or a creditor, or receiver or trustee in bankruptcy, or by the attorney general of the state, on behalf of the corporation against 1 or more of the delinquent directors, officers, or agents for the violation of, or failure to perform, the duties above prescribed or any duties prescribed by this act, whereby the corporation has been or will be injured or damaged, or its property lost, or wasted, or transferred to 1 or more of them, or to enjoin a proposed, or set aside a completed, unlawful transfer of the corporate property to one knowing the purpose thereof. The foregoing shall in no way preclude or affect any action any individual shareholder or creditor or other person may have against any director, officer, or agent for any violation of any duty owed by them or any of them to such shareholder, creditor, or other person. No director or directors shall be held liable for any delinquency under this section after 6 years from the date of such delinquency, or after 2 years from the time when such delinquency is discovered by one complaining thereof, whichever shall sooner occur."

This statute, which enabled a creditor to sue a director on behalf of the corporation for a breach of duty to the corporation, has no application in this suit by a creditor on his own behalf. The plaintiff here neither pleaded nor proved any duty owed to the creditor by the individual defendant.

The other statutory basis for liability found by the trial court (MCL 450.87; MSA 21.87) and the common-law theory of liability (partnership) are intertwined and must be considered together.

MCL 450.87; MSA 21.87, which was repealed subsequent to the institution of suit, provided:

"Sec. 87. Failure to file report; suspension of powers, liability of director or trustee. (1) If any corporation neglects or refuses to make and file the reports and/or

pay any fees required by this act within the time herein specified, and shall continue in default for 10 days thereafter, unless the secretary of state shall for good cause shown extend the time for filing of such report or the payment of such fee, as the case may be, as provided in section 91 of this act, and (2) if such corporation shall continue in default for 10 days after the expiration of such extension, its corporate powers shall be suspended thereafter, until it shall file such report, and it shall not maintain any action or suit in any court of this state upon any contract entered into during the time of such default; but nothing herein contained shall prevent the enforcement of such contract against the corporation by the other party thereto, and during the period of such suspension such corporation may exercise the power of disposing of and conveying its property and may settle and close its business. Any officer or officers of such corporation so in default who has neglected or refused to join in making of such report and/or pay such fee shall be liable for all debts of such corporation contracted during the period of such neglect or refusal."

Another statute must also be considered in assaying the effect of the foregoing section, *viz.*, MCL 450.431; MSA 21.248(1), since repealed, 1972 PA 284:

"Sec. 1. All profit corporations whose charters have become void under the provisions of section 91 of Act No. 327 of the Public Acts of 1931, being section 450.91 of the Compiled Laws of 1948, because of failure to file reports or to pay the fees may file such reports and pay such fees and may file annual reports and pay fees for every subsequent intervening year, plus 6% interest per annum and a penalty of 10% on all fees paid hereunder, prior to January 1, 1973. Upon acceptance and filing of such reports and the payment of such fees and all penalties, the voidance of charter of the corporation shall be waived, and it shall be revived in full force and effect."

And MCL 450.432; MSA 21.248(2), since repealed, 1972 PA 284:

"Sec. 2. Upon compliance with the provisions of this act, the rights of such corporation shall be the same as though no forfeiture had been operative and all contracts entered into during such intervals shall become valid."

At the time of trial, the charter of this corporation had been revived.

Persons conducting business in the name of a pretended corporation indeed may be liable as partners for any debts incurred. See *Campbell v Rukamp,* 260 Mich 43; 244 NW 222 (1932). Where the corporation has at least de facto existence, however, it is clear under Michigan law that the partnership theory of liability is inapplicable. *Berlin State Bank v Nelson,* 231 Mich 463; 204 NW 92 (1925); *Tisch Auto Supply Co v Nelson,* 222 Mich 196; 192 NW 600 (1923); *Galvin v Detroit Steering Wheel & Windshield Co,* 176 Mich 569; 142 NW 742 (1913); *Newcomb-Endicott Co v Fee,* 167 Mich 574; 133 NW 540 (1911).

Again, as a general rule, a corporation properly formed does not lose its de facto existence through the nonperformance of conditions subsequent to its incorporation, such as the failure to adopt or file bylaws, elect officers, or pay fees. See 18 CJS, Corporations, § 105, pp 501-502. Where, however, the failure to perform the condition subsequent results in the actual forfeiture of the corporate charter (as distinguished from merely making the charter subject to forfeiture in proceedings brought by the state), the corporation may lose even its de facto existence. See 18 CJS, Corporations, § 107, p 503. Under Michigan law, Zeeland

Feeder Pig, Inc.'s, charter was automatically voided "without any judicial proceedings whatsoever" upon its failure to file its annual report and to pay the privilege fee for two consecutive years. MCL 450.91; MSA 21.91; currently MCL 450.1922; MSA 21.200(922). Here the trial judge and the Court of Appeals held that the corporation lost even de facto existence upon forfeiture of its charter in 1971.

This theory is premised on the assumption that the forfeiture makes the corporation nonexistent. In Michigan, the statute providing for forfeiture of the charter must be read in light of the statute providing for retroactive reinstatement of the charter. Thus, because the charter is subject to reinstatement, this Court has said: "The corporation does not cease to exist upon its charter becoming absolutely void". *Stott v Stott Realty Co,* 288 Mich 35, 42; 284 NW 635 (1939). See, also, *Mathews v Life Ins Co of Detroit,* 284 Mich 352, 357; 279 NW 858 (1938):

"It is manifest that voidance of the charter did not, *ipso facto,* work a dissolution * * *. As long as the corporation remained eligible to reinstatement of its charter the foreclosure suit could be brought against it."

The effect of the reinstatement statute is to make the voidance of the charter more in the nature of a suspension of corporate privileges than an absolute termination of corporate existence. Thus, the Court in *Stott, supra,* 48, said of the reinstatement statute:

"It was to remove a disability and abolish a restriction of a statutory privilege which had been previously granted and at the time was suspended."

The forfeiture statute is obviously an attempt to bring to an end corporations which have ceased to conduct business as corporations. The statutory scheme calls for the winding up of corporations whose charters have been forfeited. MCL 450.75; MSA 21.75; current similar provisions are MCL 450.1833, 450.1834; MSA 21.200(833), 21.200(834). The Legislature also recognized, however, that the failure to file reports and pay fees may be the result of inadvertence or neglect rather than an indication that the corporation is defunct. Thus, it provided for the reinstatement of the corporate charter upon paying back fees, filing back reports, and paying a penalty. MCL 450.431; MSA 21.248(1); currently MCL 450.1925; MSA 21.200(925). Unlike some jurisdictions which have had difficulty with the question of whether such reinstatement was intended to be retroactive, Michigan law expressly made the reinstatement retroactive by providing that reinstatement operated to validate all contracts entered into during the period of forfeiture. Where, as here, the corporate charter has been reinstated pursuant to the statute, the corporation should be considered to have had at least de facto existence during the period of forfeiture, which would preclude application of the partnership theory of liability.

We read the reinstatement statute as intended to make actions performed in the name of the corporation during the period of forfeiture corporate acts in the normal meaning of the term. Thus, corporate obligations incurred during the period of forfeiture are binding upon the corporation, and only the corporation—individual members are no more liable than had the forfeiture not occurred. The statute describes the effect of rein-

statement, "the rights of such corporation shall be the same as though no forfeiture had been operative". When this provision is read in light of the accompanying language reflecting an intent that it be retroactively applicable to acts during the period of forfeiture, it would appear that the most basic corporate right—the right to existence as a separate legal entity—was one right which was intended to be operative as though no forfeiture had occurred.

Further, we see no reason to infer that the forfeiture statute was intended to have a separate penal effect on officers. Its basic purpose was to terminate defunct corporations and to encourage the payment of fees and the filing of reports. The penal part of the scheme embodied in § 87, which imposed personal liability on officers, was repealed because of harshness. See Michigan Law Revision Commission, Fifth Annual Report (1970), "Supplement: Business Corporation Act", commentary to § 1002, pp 267-268, referring to criticism of § 87 in Schulman & Vernava, *Corporations,* in *1969 Annual Survey of Michigan Law,* 16 Wayne L Rev 753, 756-758. To use the partnership theory to create personal liability during the period of forfeiture would be to bring about, under a common-law theory, liability akin to what had been previously imposed under the statute which was severely criticized and eventually repealed for its unreasonable and illogical harshness.

For these reasons we are persuaded that no personal liability attaches to defendant Spencer.

The judgment against the corporate defendant is affirmed; the judgment against defendant Spencer is set aside.

Costs to defendant Spencer.

FITZGERALD, C.J., and WILLIAMS, LEVIN, and COLEMAN, JJ., concurred with KAVANAGH, J.

RYAN, J. *(concurring)*. I fully concur in my brother's opinion, but feel compelled to write separately to explicate my reason for holding that the individual liability penalty provision of MCL 450.87; MSA 21.87, hereinafter § 87, is inapplicable to defendant Spencer.

Section 87 serves to suspend corporate powers after ten days of neglect or refusal to file annual reports and/or pay privilege fees, and to impose individual liability on corporate officers for debts incurred in the name of the corporation during the period of neglect or refusal. This suspension of corporate powers is easily remedied by filing the delinquent reports and remitting the overdue fees.

However, after two consecutive years of neglect or refusal to file reports and pay fees, a corporate charter is automatically revoked by operation of law.

"If any profit corporation which has heretofore been, is now or may hereafter be required to file its annual report with and pay a privilege fee to the secretary of state, shall for 2 consecutive years neglect or refuse to file such report and/or to pay such fee, the charter of such corporation shall be absolutely void, without any judicial proceedings whatsoever, and such corporation shall be wound up in any manner provided by this act unless the secretary of state shall for good cause shown extend the time for the filing of such report or the payment of such fee as the case may be. In case of extension of time as provided in this section the secretary of state shall file in his office a certificate showing the length of time granted by such extension: Provided, That in no case shall the total extension of time granted be more than 1 year: And provided further, That such extension of time shall be granted prior to the expiration of the time fixed in section 82 of this act. The provisions of this act are hereby declared to be self-executing." MCL 450.91; MSA 21.91 (repealed by 1972 PA 284).

This voidance does not signal the complete termination of the corporation, but merely marks the end of its existence as an ongoing concern. Thereafter, the corporation is statutorily granted three years to wind up its affairs. MCL 450.75; MSA 21.75 (repealed by 1972 PA 284). See also *Stott v Stott Realty Co,* 288 Mich 35; 284 NW 635 (1939); *Mathews v Life Ins Co of Detroit,* 284 Mich 352; 279 NW 858 (1938).

Moreover, a void corporate charter may be reinstated by payment of a penalty in addition to the delinquent fees, and by filing each intervening annual report. MCL 450.431; MSA 21.248(1) (repealed by 1972 PA 284). Once a corporate charter is revived, corporate powers are retroactively reinstated to validate all corporate acts transpiring during the voidance period.

"Upon compliance with the provisions of this act, the rights of such corporation shall be the same as though no forfeiture had been operative and all contracts entered into during such intervals shall become valid." MCL 450.432; MSA 21.248(2) (repealed by 1972 PA 284).

This Court is bound to implement legislative intent when interpreting statutory enactments. *Ballinger v Smith,* 328 Mich 23; 43 NW2d 49 (1950). Accordingly, we must view an act in its entirety, reading the pertinent provisions together so as to effectuate the Legislature's purpose in enacting the law. *Roberts Tobacco Co v Dep't of Revenue,* 322 Mich 519, 530; 34 NW2d 54 (1948). Penalty provisions in the nature of that at issue herein must be strictly construed. *Goetz v Black,* 256 Mich 564; 240 NW 94; 84 ALR 802 (1932); *Crosby v Pere Marquette R Co,* 131 Mich 288; 91 NW 124 (1902).

I view §§ 87 and 91 as discrete segments on a

continuum of statutory corporate dissolution. The initial default period commences ten days after the corporation's first act of neglect or refusal in filing annual reports or paying privilege fees, and continues thereafter until the delinquencies are remedied. Corporate and individual disabilities and liabilities commensurate with this time period are set forth in § 87.

However, after two consecutive years of default the corporate charter is voided, the neglect or refusal period established by § 87 is terminated, and the three-year windup period begins. A new corporate legal status marking a further progression in the process of statutory dissolution commences and all corresponding liabilities and disabilities are established by §§ 91 and 75.

I find persuasive the fact that the penal provisions of § 87 are not expressly carried over into or included within the statutory language of § 91. This omission is indicative of the Legislature's intention to limit the penalty of individual liability for corporate obligations to those incurred within the two-year period of default delineated by § 87, when construed with § 91.

"Because the statute governing the situation when the goods were delivered is not CL 1948, § 450.87, providing for officers' liability, but CL 1948, § 450.91, which does not so provide, there is no statutory basis for the plaintiff's claim of liability against defendants as officers of the corporation." *Vlasic Foods Co v Russek,* 382 Mich 544, 551; 170 NW2d 827 (1969) (Dethmers, J., *dissenting).*[1]

---

[1] In *Vlasic Foods Co v Russek,* 382 Mich 544; 170 NW2d 827 (1969), the Court was presented with a similar issue but neither of the two opinions directed thereto was able to garner a majority of the Justices' votes. The case was ultimately remanded on narrow grounds, leaving as precedent two nondispositive but instructive opinions. Justice Adams authored an opinion based on the premise that the duty to file annual reports and pay privilege fees ends when the

Moreover, it would be incongruous to judicially extend the penalty of individual liability for debts incurred in the corporate name beyond the two-year neglect or refusal period, in light of what I perceive to be the legislative purpose in enacting these two independent provisions.

Section 87 is intended to encourage compliance with certain provisions of the state's incorporation laws and revenue raising statutes by imposing penalties on both the corporation and its officers. *Reuter Hub & Spoke Co v Hicks,* 181 Mich 250; 148 NW 339 (1914). Two consecutive years of default, despite the imposition of penalties, evidences the likely intent of the corporate officers to abandon the corporate form. Section 91 was enacted to facilitate the dissolution of an inactive corporation, thereby preventing the accumulation of fees and penalties and the possible ad infinitum existence of a defunct corporation. See 16 Wayne L Rev 753, 757, fn 15 (1970). Since the penalty provision of § 87 would do nothing to further this purpose, it should be applied only to corporate debts incurred subsequent to default but prior to the voidance of the corporate charter.

Construing these statutes together, as this Court

corporate charter is voided. However, he would have found the corporate officer individually liable because of the two-year limitation provision of MCL 450.90; MSA 21.90.

"All actions and suits based on the neglect or refusal of the officers of such corporation to make and file the reports required by this act shall be commenced within 2 years after such neglect or refusal has occurred and not afterwards."

Accordingly, Justice ADAMS holds that § 87, when read in conjunction with § 90, permits a corporate creditor to sue an officer of a corporation individually for any indebtedness incurred in the corporate name during the two years subsequent to the last date of neglect or refusal. We believe that Justice ADAMS misperceives the intendment of § 90. It was meant to be a statute of limitations, circumscribing the time period during which a timely accrued cause of action may be initiated, and not as a delineation of that period of time during which a cause of action may accrue.

is constrained to do, I reach the inescapable conclusion that the penalty provision of § 87 is limited to the time frame created by the two statutes, to wit, the two-year period of neglect and refusal prior to forfeiture of the corporate charter.

This interpretation is consistent with the rule of statutory construction that penal statutes are to be strictly construed. Because it does impose a penalty, this Court is not free to extend the applicability of § 87 beyond that envisioned by the Legislature. Moreover, the limitation of the § 87 penalty provision at issue herein to the two-year period prior to voidance of the corporate charter harmonizes with the Legislature's repeal of that provision in 1973 as a result of its harshness and illogic.[2]

Since Zeeland Feeder Pig became indebted to Bergy Brothers subsequent to the voidance of the former's corporate charter pursuant to § 91, Spencer cannot be held individually liable, pursuant to § 87, for that indebtedness.

WILLIAMS, LEVIN, and COLEMAN, JJ., concurred with RYAN, J.

RILEY, J., took no part in the decision of this case.

---

[2] See *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 662-663; 213 NW2d 134 (1973), wherein Justice LEVIN notes, in dictum, the repeal of the penalty provisions of § 87.

"The new Business Corporation Act (1972 PA 284; MCL 450.1101 *et seq.;* MSA 21.200[101] *et seq.)* does not bar maintenance of an action on a contract entered into during a period of default in filing an annual report and paying franchise fees. This change in legislative policy might justify reconsideration of existing precedent as the *in terrorem* purpose of the harsh penalties of the former act are no longer functional."