**AMOCO OIL COMPANY, Appellant,**

v.

**Ralph E. HEMBREE, d/b/a
Continental Enterprises,
Inc., Respondent.**

**No. WD 41659.**

Missouri Court of Appeals,
Western District.

Sept. 12, 1989.

William T. Smith, III, Kansas City, for appellant.

Ralph E. Hembree, North Kansas City, pro se.

Before SHANGLER, P.J., and TURNAGE and KENNEDY, JJ.

KENNEDY, Judge.

Amoco Oil Company appeals from a summary judgment in favor of Ralph Hembree in a suit by Amoco against Hembree individually for the return of unearned prepaid rent in the sum of $34,956.55. Amoco on June 13, 1980, leased from Continental Enterprises, Inc., a Missouri corporation, of which Hembree was president and sole stockholder, certain real property for use as a service station-car wash business, paying Continental Enterprises, Inc., advance rent of $40,000. Continental Enterprises, Inc., simultaneously leased the premises back from Amoco, agreeing to pay Amoco rent of one cent per gallon of gasoline sold at the station. In the event of termination of the lease-leaseback arrangement, Continental Enterprises, Inc., was obligated to repay to Amoco any unused portion of the $40,000 advance rental paid by Amoco to Continental Enterprises, Inc.

The service station discontinued business in 1982 and the lease-leaseback arrangement was terminated. At that time Continental Enterprises, Inc., had paid to Amoco rent of $5,043.45, leaving a balance of $34,956.55 unearned prepaid rent. Amoco's suit is for that balance.

Hembree assumed at the time of the execution of the lease-leaseback arrangement that Continental Enterprises, Inc., was in good standing—but in fact, the corporate charter of Continental Enterprises, Inc., was in suspension, having been forfeited on January 1, 1977, under section 351.525, RSMo 1986, for failure to file annual registration and franchise tax reports and to pay franchise tax.

After the present suit against Hembree had been filed, and while the same was pending, the Secretary of State on December 22, 1987, rescinded the forfeiture of Continental Enterprises, Inc., under the authority of section 351.540, RSMo 1986, and the corporation was, in the words of the Certificate of Rescission of Forfeiture, "restored to good standing on the records of [the Secretary of State's] office".

After reinstatement of the corporation, Continental Enterprises, Inc., was added as a party defendant in the trial court in Amoco's pending suit against Hembree. Amoco's motion for summary judgment against Continental Enterprises, Inc., was granted, and Continental Enterprises, Inc., has taken no appeal from that judgment. The trial court denied Amoco's motion for summary judgment against Hembree individually, and granted Hembree's motion for summary judgment upon Amoco's claim against him. As earlier noted, Amoco has appealed from the summary judgment in Hembree's favor.

Amoco points out to us that Hembree as president of the suspended or forfeited corporation Continental Enterprises, Inc., became personally liable for new contractual obligations incurred ostensibly by Continental Enterprises, Inc., after the corporate status was forfeited, *State ex rel. Jay Bee Stores, Inc., v. Edwards*, 636 S.W.2d 61, 63 (Mo. banc 1982); *Leibson v. Henry*, 356 Mo. 953, 204 S.W.2d 310, 316 (Mo. banc 1947).

■ The question is, however, whether Hembree's personal liability continued after the reinstatement of the Continental Enterprises, Inc., corporate charter and its restoration to good standing, or whether he was relieved from personal liability. Section 351.540.2, RSMo 1986, provides:

Upon the issuance of a certificate rescinding the forfeiture of the corporate rights of a corporation, the restoration of corporate rights and privileges shall have effect from the date of the forfeiture, and all acts of the corporation, in the period between the date of forfeiture and the date of the rescission of the forfeiture shall be thereby confirmed and held as the acts of the original corporation; except that, any judgment obtained against any person in his capacity as a trustee under section 351.525 shall not be vacated by reason of any rescission under this section, but shall continue in full force and effect notwithstanding the rescission.

We have held that the reinstatement under sec. 351.540 of the charter forfeited under sec. 351.525 closed the gap between the revocation and the reinstatement. Looking back from the time of reinstatement it was as if the corporate existence had never been interrupted. *Farmers State Bank v. Place–Wiederholt Chevrolet–Oldsmobile, Inc.*, 747 S.W.2d 170, 172 (Mo.App.1988); *A.R.D.C., Inc., v. State Farm Fire & Casualty Co.*, 619 S.W.2d 843, 846 (Mo.App.1981).

Neither our statute nor any case decided thereunder directly answers the question we have before us on this appeal, namely, whether the individual who has incurred personal liability is relieved therefrom by the rescission of the forfeiture.

Other states which have considered the question are divided in their answers.

In *Barker–Chadsey Company v. W.C. Fuller Co., Inc.*, 16 Mass.App. 1, 448 N.E.2d 1283 (1983), a corporation engaged in retail hardware business brought an action against the officers of a corporation to foreclose on security and recover on a promissory note. The note had been executed by the officers on behalf of the corporation while the corporation was dissolved for failure to file reports and pay taxes. The Massachusetts statute provided that:

> [t]he effect of revival is ... that 'all acts and proceedings of its [corporation's] officers, directors and stockholders, acting or purporting to act as such, which would have been legal and valid but for such dissolution shall ... stand ratified and confirmed.'

*Barker–Chadsey Co.*, 448 N.E.2d at 1286. The court stated that revival has the usual effect of relieving the officers of personal liability. The court held that the officers would be relieved of personal liability contingent on their obtaining a revival of the corporation (the corporation had not yet been revived). Cases reaching the same result include *Bidwell v. Jolly*, 716 P.2d 481 (Colo.App.1986); *Rocky Mountain Sales & Service, Inc., v. Havana RV, Inc.*, 635 P.2d 935 (Colo.App.1981); *Frederic G. Krapf & Son, Inc. v. Gorson*, 243 A.2d 713 (Del.1968); and *Bergy Brothers, Inc., v. Zeeland Feeder Pig, Inc.*, 415 Mich. 286, 327 N.W.2d 305 (1982).

We have concluded that the cases so holding, more than those taking the opposite view,[1] are more in consonance with our holding that the gap in corporate status is obliterated by the rescission of the forfeiture.

■ We note, also, that section 351.540.2 expressly provides that a judgment obtained against any person in his capacity as a trustee under section 351.525.(4), RSMo 1986, shall not be vacated by reason of any rescission under this section but shall continue in full force and effect notwithstanding the rescission. By making this single exception in express terms, we may presume the legislature intended to leave in place all other consequences which logically follow a recognition of the corporation as having had an uninterrupted corporate life after rescission of the forfeiture. Among those consequences is the insulation of corporate officer Hembree from

---

1. Cases allowing the personal liability of an officer or director to continue upon rescission of forfeiture include the following: *In the Matter of the Estate of Plepel v. Industrial Metals, Inc.*, 115 Ill.App.3d 803, 71 Ill.Dec. 365, 450 N.E.2d 1244 (1983); *Nichols–Homeshield, Inc., v. Mid–American Const. Supply, Inc.*, 643 P.2d 309 (Okla.1982); and *Lents, Inc., v. Borstad*, 251 Or. 296, 445 P.2d 597 (1968).

personal liability upon a contract executed in behalf of the corporation during the period of dormancy. This, furthermore, is in accord with the expectations of the parties when the lease and sublease were signed in 1980, a feature noted in *Barker–Chadsey Co.*, 448 N.E.2d at 1287. Hembree's personal liability was unintended and unexpected by either party when the contracts were made.

For a second point, Amoco challenges the validity of the rescission of the forfeiture and the reinstatement of the forfeited corporation on the ground of the time elapsed between the forfeiture on January 1, 1977, and the rescission of the forfeiture on December 22, 1987, a lapse of almost 11 years.

The statute prescribes no time limit for the rescission of a forfeiture, nor do we know of any cases which have applied any time limit. Since the legislature has placed no time limit upon the rescission of a forfeiture, we will not presume to do so. *Barker–Chadsey Co.*, 448 N.E.2d at 1287.

Judgment affirmed.

All concur.