PHOENIX ENERGY SALES
CO., Plaintiff,

v.

Rand GOODMAN, et al, Defendants.

Civil Action No. 96–40391.

United States District Court,
E.D. Michigan,
Southern Division.

March 31, 1997.

Cheryl B. Lord, Plunkett & Clooney, Detroit, MI, Plaintiff.

Henry J. Mittelstaedt, III, Shermeta, Chimko & Kilpatrick, Rochester Hills, MI, for Randy Goodman, James Carmody.

Stephen Shefman, Southfield, MI, for William Greig.

GADOLA, District Judge.

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On November 5, 1996, Phoenix Energy Sales Company ("Phoenix"), previously known as "Energy Sales Company," a supplier of natural gas, filed a two count complaint with this court. Count I alleges breach of certain agreements dated June 1, 1995 through May 31, 1996 to purchase natural gas on account in an amount totaling $863,879.87, exclusive of interest and costs. Count I names the following as defendants: (1) Clinton Gas Marketing, Inc. ("CGMI"), a broker of natural gas, (2) Clinton Gas Marketing ("Clinton Gas Marketing") (3) Randy Goodman ("Goodman"), President of CGMI, (4) James Carmody ("Carmody"), Vice–President of CGMI, (4) Natgo, Inc., a corporation owned solely by Goodman and Carmody with an office located at the same location as CGMI's office, and (5) Natgo.[1] Count II alleges that defendant William Greig ("Greig") guaranteed collection of sums due to Phoenix prior to September 30, 1995 and seeks a judgment of $43,062.74 plus costs and interest against Greig. This matter is currently before this court on a motion for summary judgment filed by Goodman and Carmody on January 24, 1997. For the following reasons, the motion will be granted in part and denied in part.

### FACTS

The following facts are relevant to the Goodman/Carmody motion for summary judgment. On May 13, 1987, CGMI was deemed incorporated under the laws of the State of Michigan. Under Section 911 Michigan Business Corporation Act, Mich.Comp. Laws § 450.1911, CGMI was required each year of its existence to file an annual report and filing fee prior to May 15. In 1993, CGMI failed to file its annual report and fee. On or after February 28, 1995, CGMI submitted its 1993 annual report with a fee of $20.00. This amount did not include the sum owed as a penalty for late filing pursuant to Section 921 of the Michigan Business Corporation Act, Mich.Comp.Laws § 450.1921. Thus, on July 15, 1995 (two years and sixty days after the 1993 deadline for filing an annual report and fee), CGMI was automatically dissolved pursuant to Section 922 of the Michigan Business Corporation Act, Mich. Comp.Laws § 450.1922(1). Section 922 reads in relevant part as follows:

> If a domestic corporation neglects or refuses to file any annual report or pay any annual filing fee or a penalty added to the fee required by law, and the neglect or refusal continues for a period of 2 years from the date on which the annual report or filing fee was due, the corporation shall be automatically dissolved.

Mich.Comp.Laws § 450.1922(1).

On December 30, 1996, the State of Michigan renewed the corporate existence of CGMI under Section 925 of the Michigan Business Corporation Act, Mich.Comp.Laws

---

1. To date, no appearance has been filed on behalf of Clinton Gas Marketing, CGMI, Natgo and Natgo, Inc. Consequently, a Clerks Entry of Default Judgment was entered against these defendants on March 10, 1997.

§ 450.1925, which reads in pertinent part, as follows:

(1) A domestic corporation which has been dissolved under subsection (1) of section 922 ... may renew its corporate existence ... by filing the reports and paying the fees for the years for which they were not filed and paid, and for every subsequent intervening year, together with the penalties provided by section 921.

Prior to the date of renewal of CGMI's corporate charter by the State of Michigan, Phoenix filed the instant action against, among others, Goodman and Carmody to collect sums owed pursuant to written sales agreements entered into between June 1, 1995 and May 31, 1996. Goodman and Carmody insist that the only entity which entered into said contracts with Phoenix was CGMI. They further contend that while they may have been liable to Phoenix for CGMI's debts during its state of dormancy, their liability has since ceased due to renewal of CGMI's corporate charter.

### ANALYSIS

Once again, defendants Goodman and Carmody insist that they should be dismissed from this lawsuit. As they read the complaint, Phoenix is only suing them for acting as general partners operating under the name of CGMI during the period of CGMI's corporate dissolution. Carmody and Goodman assert that such a partnership theory of liability is no longer possible in light of CGMI's renewal of corporate existence.

In response, Phoenix argues that the general partnership theory remains a viable cause of action, notwithstanding the renewal of CGMI's corporate charter. Moreover, Phoenix contends that it is not suing Goodman and Carmody only under a general partnership theory. In addition to their liability as general partners, Phoenix maintains that Goodman and Carmody are also liable to Phoenix as (1) individuals, and (2) as individuals trading and doing business as CGMI, Clinton Gas Marketing, Natgo, and Natgo, Inc. This court will address the merits of each of these three theories of liability against Goodman and Carmody in turn.

### 1. Goodman and Carmody's Liability to Phoenix as Individuals

According to Phoenix, Carmody and Goodman are liable to Phoenix for payment of the gas because they operated their corporations and other entities, i.e. CGMI and Natgo, Inc., as one business with the purpose of avoiding creditors. In essence, Phoenix is attempting to pierce the corporate veils of CGMI and Natgo, Inc.[2] on the grounds that these two defendants, as officers and shareholders, engaged in a shell game with their assets in a bald attempt to circumvent their obligation to Phoenix. In Michigan, this practice of piercing the corporate veil has long been upheld. Ordinarily, however, "a corporate veil will not be pierced absent fraud, sham or other improper use of the corporate form." *Williams v. American Title Ins. Co.,* 83 Mich.App. 686, 697, 269 N.W.2d 481 (1978) (citations omitted).[3]

Carmody and Goodman argue that the complaint contains no allegations of fraud, and hence does not put them on notice of Phoenix's intention of piercing the corporate veil. Phoenix alleges that the following paragraphs of the complaint put Carmody and Goodman on notice that they were being sued in their individual capacity for such misconduct:

2. Defendant *Randy Goodman* ("Goodman") is an individual residing at 244 N. Broadway, Lake Orion, Michigan 48362, *acting individually* and trading and doing business as "Clinton Gas Marketing"

---

2. They also attempt to pierce the veils of Clinton Gas Marketing and Natgo if these are discovered to be legal entities. *It is unclear at this time whether these are merely trade names for CGMI and Natgo, Inc., respectively, or whether they are separate entities.*

3. In *Wallace v. Detroit Coke et al.,* 818 F.Supp. 192 (E.D.Mich.1993), the court identified the factors which the Sixth Circuit considers in deciding whether to pierce the corporate veil. These factors include undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham. *Id.* at 195.

and/or "Clinton Gas Marketing, Inc.," "Natgo" and/or "Natgo, Inc."

3. Defendant *James Carmody* ("Carmody") is an individual residing at 510 Cherry Blossom Lane, Rochester Hills, Michigan 48306, *acting individually* and trading and doing business as "Clinton Gas Marketing," "Clinton Gas Marketing, Inc.," "Natgo," and/or "Natgo,Inc."

4. Defendant Clinton Gas Marketing, Inc. and/or Clinton Gas Marketing ("Clinton Gas") was, from May 13, 1987 until July 15, 1995, a Michigan corporation with its principle offices located at 120 Peabody Road, Birmingham, Michigan 48011. On July 15, 1995, the corporate status and corporate shield of Clinton Gas was automatically dissolved pursuant to the law of the State of Michigan, specifically the provisions of Section 922(1), Act 284, Public Acts of 1972, as amended.

5. Defendants *Goodman and Carmody were the sole shareholders of Clinton Gas* until the corporation was automatically dissolved.

7. It is believed and therefore averred that in late 1995, Defendant Natgo, Inc. ("Natgo") was a Michigan corporation with its principle offices located at 120 Peabody Road, Birmingham, Michigan 48011. Defendant Natgo's corporate status and corporate shield were thereafter automatically dissolved pursuant to the law of the State of Michigan, specifically the provisions of Section 922(1), Act 284, Public Acts of 1972, as amended, on July 15, 1996.

8. Defendants *Goodman and Carmody were the sole shareholders of Natgo* until the corporation was automatically dissolved.

(emphasis added).

This court finds that the aforementioned paragraphs of the complaint contain no allegations of fraud, sham or other improper use of the corporate form which would apprise Carmody or Goodman of Phoenix's attempt at piercing the corporate veil. Indeed, a review of the entire complaint reveals not even so much as one fact hinting at such impropriety on the part of these two defendants. The Federal Rules of Civil Procedure, specifically Rule 8, mandates that Phoenix "give the defendant[s] [Carmody and Goodman] fair notice of what the plaintiff's [Phoenix's] claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) The complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory," *Allard v. Weitzman,* 991 F.2d 1236, 1240 (6th Cir.1993) (citations omitted). It need not, however, set forth an intricately detailed description of the asserted basis for relief. Here, without any allegations of fraud, it cannot be said that Carmody or Goodman were on notice that Phoenix is attempting to utilize the doctrine of "piercing the corporate veil" as a basis of liability against them. Therefore, this court finds that plaintiff's complaint sets forth no claims against defendants Carmody and Goodman on the basis of fraud, sham or other improper use of the corporate form which would permit plaintiff to "pierce the corporate veil."

## 2. *Whether Carmody and Goodman Are Liable as Individuals Trading and Doing Business as CGMI or Clinton Gas Marketing*

■ Plaintiff's second theory of liability is that Carmody and Goodman are liable for the sums owed Phoenix because they purchased natural gas as individuals trading and doing business as Clinton Gas Marketing, CGMI, Natgo, and Natgo, Inc. ("trading and doing business theory"). Carmody and Goodman argue that there is no evidence to support such an allegation. These two defendants insist that at all times Phoenix knew it was dealing only with CGMI, and never with Carmody and Goodman as individuals trading and doing business as Clinton Gas Marketing, CGMI, Natgo, or Natgo, Inc. For example, Goodman and Carmody contend that Phoenix must have been cognizant that it was dealing only with CGMI because Count II of its complaint contains a claim for breach of a personal guarantee by Greig for monies which became due and owing prior to September 30, 1995. That personal guarantee only secured the debts of CGMI, reading in relevant part as follows:

In consideration of, and in order to induce you to sell natural gas and natural gas products, on open account, to *Clinton Gas Marketing. Inc.*, a Michigan corporation, from time to time, I hereby guarantee to you collection of all sums becoming due to you from *Clinton Gas Marketing, Inc.* on open account as a result of your sale of natural gas to *Clinton Gas Marketing, Inc.*

. . .

Also, Goodman and Carmody assert that Phoenix's Accounts Receivable Aging Report dated June 12, 1996 shows the customer as "Clinton Gas Marketing," bearing customer number 01965, the same number listed on every one of the allegedly outstanding invoices involved in this lawsuit.[4] Furthermore, they point out that all monies owed to Phoenix were paid out of a corporate account at National Bank of Detroit, North America, not from Carmody's or Goodman's individual accounts. In sum, Carmody and Goodman characterize Phoenix's case as a plain and simple "collection lawsuit" brought against one entity—CGMI—to which natural gas was perilously sold on unlimited credit.

Phoenix maintains that there is a genuine issue of material fact as to with whom or what it was dealing. Phoenix proffers the affidavit of Frank J. Ross, Vice–President of Phoenix, averring that "[a]t various times, Phoenix Energy Sales Company and/or its predecessor Energy Sales Company entered into agreements to supply natural gas to James Carmody and Randy Goodman, individually and doing business as Clinton Gas Marketing and Clinton Gas Marketing, Inc. [CGMI]" He further asserts that this is evident from correspondence and letter agreements which he received that were signed by Goodman and Carmody for "Clinton Gas Marketing" without any mention of their official capacities, i.e. President or Vice–President. Moreover, Ross attests that he re-

ceived a facsimile cover sheet from Goodman advising him that he was receiving information from CGMI and Natgo, Inc., and thus he believed he was also doing business with Natgo, Inc. and/or Natgo.

At this infantile stage in the litigation, there is a genuine issue of material fact as to whether Carmody and Goodman are liable under a trading and doing business theory.[5] The letter agreements signed by Goodman and Carmody in their unofficial capacities as well as Ross' affidavit give rise to such a genuine issue. Discovery may reveal that at all times Phoenix was doing business only with one entity-CGMI. If that be the case, Goodman and Carmody can renew their motion for summary judgment.

### 3. Whether Carmody and Goodman Are Liable Under a Partnership Theory

As a third theory of liability, Phoenix asserts that Carmody and Goodman are liable for the debts incurred by CGMI during its period of corporate dissolution because during that time these two individuals ran CGMI as a partnership under the name of Clinton Gas Marketing and/or CGMI ("partnership theory" claims) Carmody and Goodman insist that they are no longer liable under a partnership theory for CGMI's debts[6] as alleged by Phoenix in its complaint since the corporate existence of CGMI has recently been renewed. Carmody and Goodman argue that the effect of renewal is twofold. First, according to these two defendants renewal makes all contracts entered into by CGMI with Phoenix from and after the date of dissolution valid and enforceable. Second, Carmody and Goodman contend that reinstatement of the corporate charter releases individual members of the corporation for debts incurred during the period of dissolution.

---

**4.** Notwithstanding the fact that it lists "Clinton Gas Marketing" as the customer, Carmody and Goodman maintain that this Report refers only to CGMI. These defendants insist that all references to Clinton Gas Marketing are more specifically references to CGMI because Clinton Gas Marketing is a non-legal entity.

Phoenix argues that it is not clear at this time whether this is true. Phoenix contends that discovery on the issue will confirm whether there is

a separate legal entity known as Clinton Gas Marketing or not. If there is, Phoenix maintains that it did business with two separate entities.

**5.** Discovery has just commenced and no scheduling order has been entered.

**6.** Carmody and Goodman consider Clinton Gas Marketing and CGMI to be one and the same.

Section 925(2) of the Michigan Business Corporation Act, Mich.Comp.Laws § 450.1925(2), certainly makes all contracts entered into prior to dissolution valid and enforceable upon a subsequent renewal of the corporate existence. This Section provides:

> Upon compliance with the provisions of this section, the rights of the corporation shall be the same as though a dissolution or revocation had not taken place, and all contracts entered into and other rights acquired during the interval shall be valid and enforceable.

Mich.Comp.Laws § 450.1925. *See also Cardinal–Franklin Collections, Ltd. v. Dep't. of Licensing and Regulation,* 177 Mich.App. 594, 598–99, 443 N.W.2d 176 (1989) ("where a dissolved corporation regains corporate status upon subsequent compliance, 'the rights of the corporation shall be the same as though a dissolution or revocation had not taken place, and all contracts entered into and other rights acquired during the interval shall be valid and enforceable.'") (*citing* Mich.Comp.Laws § 450.1925).

In regard to the issue of whether an individual member of the corporation remains liable after renewal, the case of *Bergy Brothers, Inc. v. Zeeland Feeder Pig, Inc.,* 415 Mich. 286, 327 N.W.2d 305 (1982), provides guidance. In *Bergy,* the Michigan Supreme Court was faced with the issue of whether George Spencer, President of Zeeland Feeder Pig, Inc., could be held liable under a partnership theory for debts the corporation incurred during a period between statutory dissolution and renewal of the corporate charter. The Michigan Supreme Court held that he could not, stating:

> Where, as here, the corporate charter has been reinstated pursuant to the statute [providing for reinstatement upon the payment of back fees, filing back reports, and paying a penalty], the corporation should be considered to have had at least *de facto* existence during the period of forfeiture, which would preclude application of the partnership theory of liability.

See also *City Communications, Inc. v. City of Detroit,* 888 F.2d 1081, 1087 (6th Cir.1989) (citing *Bergy* when holding that corporations dissolved under Michigan law "are deemed 'to have had at least *de facto* existence' during the gap in their charter"); *Amoco Oil Co. v. Ralph E. Hembree,* 776 S.W.2d 68, 70 (Mo.App.1989) (holding that "revival has the usual effect of relieving the officers of personal liability" and citing the *Bergy* case).

Phoenix urges this court to disregard *Bergy* and instead follow the case of *Vlasic Foods Co. v. Russek,* 382 Mich. 544, 170 N.W.2d 827 (1969). This court will not do so, however, because *Vlasic Foods* dealt with a provision which is no longer part of the Michigan Business Corporation Act. In *Vlasic Foods,* liability was imposed on defendants pursuant to a penalty provision at Section 87 of the former Michigan Business Corporation Act, providing in pertinent part that:

> Any officer or officers of such corporation so in default who has neglected or refused to join in making of such report and/or pay such fee shall be liable for all debts of such corporation contracted during the period of such neglect or refusal.[7]

Once again, this penalty provision is not part of the current Michigan Business Corporation Act, and hence Phoenix's reliance on *Vlasic Foods* is wholly misplaced. Moreover, *Vlasic Foods* involved a situation in which the corporate charter was never renewed, making that case strikingly dissimilar from the case at hand.

■ Following *Bergy* and rejecting *Vlasic Foods,* this court holds that once a corporation's charter has been reinstated, the actions of the corporation are in full force and effect and the individual officers, directors, and shareholders are not liable for the debts of the corporation incurred during the time period between automatic dissolution and reinstatement of the corporate charter. Accordingly, neither Goodman nor Carmody are liable for the debts incurred by CGMI during its period of corporate dissolution as its charter has subsequently been restated. Phoenix's partnership theory claims against Carmody and Goodman must be dismissed.

---

7. The prior section 87 is now found in two sections of the Michigan Business Corporation Act, specifically sections 921 and 923, Mich.Comp. Laws §§ 450.1921, 450.1923.

### ORDER

**IT IS HEREBY ORDERED** that summary judgment on plaintiff's claim against Goodman and Carmody based on a partnership theory of liability is **GRANTED** and such claims are dismissed with prejudice.

**IT IS FURTHER ORDERED** that the complaint is construed so as not to include claims against Carmody and Goodman in their individual capacity on any theory of fraud, sham or improper use of the corporate form which would support a finding that the corporate veil be pierced.

**IT IS FURTHER ORDERED** that at this stage of the litigation summary judgment be **DENIED** on plaintiff's claims against Goodman and Carmody as individuals trading and doing business as Clinton Gas Marketing, CGMI, Natgo and Natgo, Inc. **SO ORDERED.**